UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY CLARKIN, | ) 1 3 7 6 NMG |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) MAGISTRATE JUDGE _____ |
| WHEATON COLLEGE and PROFESSOR TIMOTHY BARKER, | ) RECEIPT # _____ |
| | ) AMOUNT $ _____ |
| Defendants. | ) SUMMONS ISSUED _____ |
| | ) LOCAL RULE 4.1 _____ |
| | ) WAIVER FORM _____ |
| | MCF ISSUED _____ |

**NOTICE OF REMOVAL**

BY DPTY. CLK. _____
DATE _____

Pursuant to 28 U.S.C. § 1441(b) and (c), defendants Wheaton College and Timothy

Barker (collectively, "Defendants") hereby remove to this Court the above-captioned action

currently pending in the Superior Court Department of the Trial Court, Bristol County,

Massachusetts, Civil Action No. BRCV2005-00271-B (the "Action"). Removal of the Action is

proper for the reasons set forth below.

## BASIS FOR REMOVAL

1.     Removal of the Action is proper under 28 U.S.C. § 1331 because the complaint

filed by the plaintiff, Timothy Clarkin ("Plaintiff"), asserts claims under the Americans with

Disabilities Act, 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794(a), et

seq. See Complaint at Counts IV and V. Both of those statutes are federal statutes. These

claims arise under the laws of the United States, as required for removal by 28 U.S.C. § 1331.

2.     Pursuant to 28 U.S.C. § 1441(b) and (c), Defendants may remove Plaintiff's

claims to this Court.

3.     Defendants have filed contemporaneously the attached Notice of Filing of Notice

of Removal, pursuant to 28 U.S.C. § 1446(d), with the Clerk of the Bristol Superior Court, and

# 3016568_v1                                     1

contemporaneously served both Notices on Plaintiff's counsel. The Notice of Filing of Notice of Removal is attached hereto as Exhibit A.

## TIMELINESS OF REMOVAL

4.     The Action was filed by Plaintiff in Bristol Superior Court on or about May 31, 2005. The Summons and Complaint were served on Defendants on June 9, 2005. In accordance with 28 U.S.C. § 1446(a), all process, pleadings and orders entered by Plymouth Superior Court, including a true and accurate copy of the Summons and Complaint, are attached hereto as Exhibit B.

5.     This Notice of Removal is filed with this Court on a timely basis, as required by 28 U.S.C. § 1446(b), as it is being filed within thirty (30) days of the service of Plaintiff's Complaint upon Defendants. Likewise, this Notice is filed within thirty days of Defendants earliest date of actual notice of Plaintiff's Complaint, as the time of service is the first time Defendants had possession of a copy of Plaintiff's Complaint.

**WHEREFORE**, Wheaton College and Timothy Barker respectfully request that the Action proceed in this Court as properly removed hereto.

Respectfully submitted,

WHEATON COLLEGE and
TIMOTHY BARKER,

By their attorneys,

HOLLAND & KNIGHT LLP

Miriam J. McKendall, P.C. (BBO# 548825)
Maura J. Gerhart (BBO# 654695)
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Date: June 29, 2005

# 3016568_v1                                              2

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the foregoing Notice of Removal to be served on the parties listed below via first class mail on this 29th day of June, 2005:

Diane P. Caggiano, Esq.
Law Offices of Diane P. Caggiano
P.O. Box 183
280 Winter Street
Hyannis, MA  02601

Maura J. Gerhart, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)   Timothy Clarkin v. Wheaton College

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [  ] | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| [XX] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases |
| [  ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| [  ] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| [  ] | V. | 150, 152, 153. |

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [  ]      NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES [  ]      NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [  ]      NO [  ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [  ]      NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [X]      NO [  ]

   A.      If yes, in which division do all of the non-governmental parties reside?

   Eastern Division  [X]          Central Division  [  ]          Western Division  [  ]

   B.      If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division  [  ]          Central Division  [  ]          Western Division  [  ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

   YES [  ]      NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Miriam J. McKendall, P.C.

ADDRESS   Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116

TELEPHONE NO.   (617) 523-2700

(CategoryForm.wpd - 5/2/05)

℀JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Timothy Clarkin | Wheaton College and Professor Timothy Barker |

| (b)  County of Residence of First Listed Plaintiff   New York County, | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) New York | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.   (617) 523-2700 |

| (c)  Attorney's (Firm Name, Address, and Telephone Number) (508) 775-4560 | Attorneys (If Known)  Miriam J. McKendall, P.C. |
|---|---|
| Diane P. Caggiano, Esq. | Holland & Knight, LLP |
| Law Offices of Diane P. Caggiano | 10 St. James Avenue, Boston, MA 02116 |
| 404 Main Street, Centerville, MA 02632 | |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    (U.S. Government Not a Party)

☐ 2  U.S. Government
    Defendant

☐ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☒ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original
    Proceeding

☒ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
Americans with Disabilities Act and Section 504 of the Rehabilitation Act

Brief description of cause:  Disability Discrimination

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint: JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instructions):  JUDGE | DOCKET NUMBER |
|---|---|---|

DATE
6/29/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                                SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| TIMOTHY CLARKIN, | |
| Plaintiff, | |
| v. | |
| WHEATON COLLEGE and PROFESSOR TIMOTHY BARKER, | Civil Action No. BRCV2005-00271-B |
| Defendants. | |

## NOTICE OF FILING NOTICE OF REMOVAL

TO:    THE HONORABLE JUDGES OF THE SUPERIOR COURT

NOTICE IS HEREBY GIVEN that on the twenty-ninth day of June, 2005, the defendants

Wheaton College and Timothy Barker filed a Notice of Removal of this action in the United

States District Court for the District of Massachusetts. A true and accurate copy of the Notice of

Removal so filed is attached hereto as Exhibit 1. Therefore, the defendants respectfully request

that this Court proceed no further in this matter.

Respectfully submitted,

WHEATON COLLEGE and
TIMOTHY BARKER,

By their attorneys,

HOLLAND & KNIGHT LLP

Miriam J. McKendall, P.C. (BBO# 548825)
Maura J. Gerhart (BBO# 654695)
Holland & Knight LLP
10 St. James Avenue
Boston, Massachusetts 02116
Dated: June 29, 2005                (617) 523-2700

## **CERTIFICATE OF SERVICE**

I certify that I have caused a true and correct copy of the foregoing Notice of Filing Notice of Removal to be served on the parties listed below via first class mail on this 29th day of June, 2005:

Diane P. Caggiano, Esq.
Law Offices of Diane P. Caggiano
P.O. Box 183
280 Winter Street
Hyannis, MA  02601

Maura J. Gerhart, Esq.

# 3016626_v1

Commonwealth of Massachusetts
County of Bristol
**The Superior Court**

CIVIL DOCKET# **BRCV2005-00271-B**

RE: **Clarkin v Wheaton College et al**

TO:Diane P Caggiano, Esquire
Caggiano Joakim PC
404 Main Street
Centerville, MA 02632

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 06/13/2005 |
| Response to the complaint filed (also see MRCP 12) | 08/12/2005 |
| All motions under MRCP 12, 19, and 20 filed | 08/12/2005 |
| All motions under MRCP 15 filed | 08/12/2005 |
| All discovery requests and depositions completed | 01/09/2006 |
| All motions under MRCP 56 served and heard | 02/08/2006 |
| Final pre-trial conference held and firm trial date set | 03/10/2006 |
| Case disposed | 05/09/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session B sitting in **CtRm 2 (Fall River) at Bristol Superior Court.**

Dated: 03/15/2005

Marc J. Santos
Clerk of the Courts

BY: Joseph T. Vincent / Peter R. Andrade
Assistant Clerk

Location: CtRm 2 (Fall River)
Telephone: (508) 672-4464

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 443174 inidoc01 lagejess

# COMMONWEALTH OF MASSACHUSETTS

(L.S.)

BRISTOL, ss.

SUPERIOR COURT DEPT. OF THE TRIAL COURT

CIVIL ACTION

[SEAL]

No. BRCV2005-00271-B

TIMOTHY CLARKIN _____ , Plaintiff (s)

v.

WHEATON COLLEGE AND
PROFESSOR TIMOTHY BARKER _____ , Defendant(s)

(TO PLAINTIFF'S ATTORNEY :
    PLEASE INDICATE TYPE OF ACTION INVOLVED :—
    TORT -X- MOTOR VEHICLE TORT — CONTRACT -X-
    EQUITABLE RELIEF — OTHER.)

### SUMMONS

To the Above-Named Defendant: PROFESSOR TIMOTHY BARKER

You are hereby summoned and required to serve upon Diane P. Caggiano, Esq.,
Law Offices of Diane P. Caggiano
plaintiff's attorney, whose address is P.O. Box 183, 280 Winter St., Hyannis, MA
an answer to the complaint which is herewith served upon you, within (20) days after 02601
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the office of the Clerk of this
Court at Taunton, MA either before service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim
any claim which you may have against the plaintiff which arises out of the transaction or
occurrence that is the subject matter of the plaintiff's claim or you will thereafter be
barred from making such claim in any other action.

Witness, Hon. Barbara J. Rouse, Adm. Justice of the Superior Court Dept. of the Trial
Court, at Taunton, the 31st day of May , in the year
of our Lord two thousand and five

A TRUE ATTESTED COPY

06/09/05

BRISTOL COUNTY DEPUTY SHERIFF

_Magistrate_

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3.  If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

2SC 24

Form #42



# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.

SUPERIOR COURT DEPT. OF THE TRIAL COURT

CIVIL ACTION

[SEAL]

No. BRCV-2005-00271-2B

TIMOTHY CLARKIN _____ , Plaintiff (s)

v.

WHEATON COLLEGE AND

____PROFESSOR TIMOTHY BARKER_____ , Defendant(s)

(TO PLAINTIFF'S ATTORNEY :
    PLEASE INDICATE TYPE OF ACTION INVOLVED :—
    TORT —✗ MOTOR VEHICLE TORT — CONTRACT —✗
    EQUITABLE RELIEF — OTHER.)

### SUMMONS

TO THE ABOVE-NAMED DEFENDANT:  WHEATON COLLEGE

You are hereby summoned and required to serve upon Diane P. Caggiano, Esq.

plaintiff's attorney, whose address is P.O. Box 183, 280 Winter Street, Hyannis, MA 02601 an answer to the complaint which is herewith served upon you, within (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at ....Taunton....,.MA........ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Hon. Barbara J. Rouse, Adm. Justice of the Superior Court Dept. of the Trial Court, at Taunton, the...31st...................................................day of.......May................................., in the year of our Lord two thousand and five...................................

A TRUE ATTESTED COPY

06/06/05

*Magistrate*

_____ , Esq.

BRISTOL COUNTY DEPUTY SHERIFF

NOTES.

1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3.  If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

2SC 24

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BRISTOL DIVISION
CIVIL ACTION NO.

TIMOTHY CLARKIN

Plaintiff,

v.

COMPLAINT

WHEATON COLLEGE AND TIMOTHY BARKER

Defendants

### NATURE AND BASIS OF ACTION

1.      This is an action for breach of contract, invasion of privacy, tortuous interference

with an advantageous relationship, and disability discrimination in violation of the Americans

with Disabilities Act, 42 U.S.C. §12101 et. seq. and Section 504 of the Rehabilitation Act, 29

U.S.C. §701 et. seq.

### PARTIES

2.      Plaintiff Timothy Clarkin ("Mr. Clarkin") is a resident of New York, New York

and an undergraduate student at defendant Wheaton College.

3.      Defendant Wheaton College ("Wheaton") is a private educational institution of

higher learning organized and existing under the laws of the Commonwealth of Massachusetts

and located in Norton, Bristol County, Massachusetts.

4.      Defendant Timothy Barker ("Professor Barker") is employed by Wheaton as

Professor of Astronomy and Director of Science Programs.  On information and belief Professor

Barker resides in Bristol County, Massachusetts.

## FACTUAL ALLEGATIONS

5.     Mr. Clarkin has been diagnosed with and treated for a medical condition called Attention Deficit Disorder ("disability").

6.     At the beginning of each semester at Wheaton, Mr. Clarkin has requested in writing that Wheaton accommodate his disability by affording him extended time for tests and a distraction-free testing location. A true and correct copy of an Accommodation Request Form dated September 4, 2002 is attached as **Exhibit A**.

7.     Wheaton made reasonable accommodations for Mr. Clarkin's disability, sending Mr. Clarkin's professors at the beginning of each semester a memorandum advising them that Mr. Clarkin had a "documented learning difference" and requesting that they accommodate his disability by affording him "[e]xtended time for tests and quizzes" and a "separate, distraction-free testing location." A true and correct copy of a memorandum sent to Mr. Clarkin's professors, including defendant Professor Barker, dated September 5, 2002 is attached as **Exhibit B.**

8.     Mr. Clarkin was a student in Professor Barker's Astronomy 140 class during the 2002 fall semester.

9.     Professor Barker's faculty profile on Wheaton's Internet website, a true and correct copy of which is attached as **Exhibit C**, states in pertinent part that "All astronomy courses taught at Wheaton are now at least partially Web-based. ... The goal of this Web-based approach is to help students learn better and faster outside class so that more class time can be spent discussing and 'uncovering' the materials, rather than just covering it."

10.    As a student in Professor Barker's class, Mr. Clarkin was instructed to log on to the class website to get class notes that students might have missed from a previous class and to ascertain whether Professor Barker would be conducting the next class, as scheduled.

2

11. As was his practice, Mr. Clarkin logged on to the class website before the class scheduled for December 5, 2002 to confirm that the class would be held as scheduled and to check the class notes from the previous class, which he had missed.

12. After the notes on the site was a heading "Questions On Today's Assignment," which was followed by a series of questions and answers. Mr. Clarkin read the questions and concentrated on the answers. Because Mr. Clarkin had particular difficulty understanding one particular question and answer, he reviewed that question and answer repeatedly, to the point that he had committed it to memory virtually word for word as Professor Barker had written it.

13. Mr. Clarkin did not know at the time that the answers were to the questions on the test he would be asked to take on December 5th. Professor Barker had not previously posted on the class website the questions and answers to a test before the test was held.

14. Because of his disability, and as a result of the reasonable accommodations Wheaton made for such disability, Mr. Clarkin was permitted to take tests given by Professor Barker outside of the classroom.

15. On one occasion, Mr. Clarkin told Professor Barker that he would be taking the test in a location which, as it turned out, proved too crowded for Mr. Clarkin to concentrate, forcing him to move to the library. Unbeknownst to Mr. Clarkin, Professor Barker went looking for him, but did not find him where Mr. Clarkin told him he would be.

16. On another occasion, Mr. Clarkin was where he told Professor Barker he would be, but Professor Barker could not find him.

17. Based solely on the fact that Mr. Clarkin took tests out of his sight, Professor Barker suspected that Mr. Clarkin was logging on to the class website to copy test answers, a suspicion he had apparently held throughout the term but did not share with Mr. Clarkin prior to December 5, 2002.

3

18.     On December 5, 2002, Mr. Clarkin, as usual, took the test given by Professor

Barker outside of his presence. Because the questions and answers had been posted *verbatim* on

the class website, and because he had committed one of the answers to memory, Mr. Clarkin was

able to answer that question on the test word for word as Professor Barker had written it.

19.     On December 9, 2002, Mr. Clarkin received an e-mail from Professor Barker

requesting that he see him during office hours that afternoon. The e-mail stated in pertinent part

that "I'm concerned that it appears that you've been using the answers that I've been putting on

the web when you take your quizzes outside of the classroom. For this reason, please bring your

old quizzes when you see me today." A true and correct copy of the December 9th e-mail is

attached as **Exhibit D**.

20.     After receiving the December 9 e-mail, Mr. Clarkin went to Professor Barker's

office immediately, where Professor Barker not only accused him of cheating on the test of

December 5th but of cheating on previous tests. He stated that he wanted to review Mr. Clarkin's

work over the entire term because, if he did, he was "certain" to find more evidence of cheating.

Professor Barker inferred from the fact that Mr. Clarkin had discarded the tests as soon as he got

them back and checked the mark as further evidence that he had been systematically cheating.

21.     Neither Professor Barker nor any other person witnessed Mr. Clarkin consulting

the class website to copy answers to the December 5th test posted on the website while taking the

test, nor does any person have knowledge that Mr. Clarkin cheated on the December 5th test.

22.     In a letter dated December 16, 2002, Christopher Paquet, Chair of Wheaton's

College Hearing Board ("Mr. Paquet"), and Jack Kuszaj, Associate Dean of Students ("Dean

Kuszij"), advised Mr. Clarkin that he was being accused of violating the Honor Code of

Wheaton College, specifically that he was being "charged by Professor Tim Barker with copying

answers to a quiz given in Astronomy 140 on December 5, 2002 from class notes posted on" the

4

class's Internet website. A true and correct copy of the December 16th letter is attached as **Exhibit E**.

23.    Following his return from Christmas vacation, Mr. Clarkin submitted to the College Hearing Board a written statement in response to Professor Barker's cheating charge. A true and correct copy of the statement is attached as **Exhibit F**.

24.    In a letter dated February 3, 2003, Messrs. Kuszaj and Paquet, among other things, (a) advised Mr. Clarkin that he was being accused of violating the Wheaton Honor Code, "specifically ... copying answers to a quiz given in Astronomy 140 on December 5, 2002 from class notes posted on the Wheaton network," (b) acknowledged receipt of Mr. Clarkin's written response to Professor Barker's charge, and (c) stated that they would be in further contact with him after they had reviewed his statement and determined whether the evidence warranted a formal hearing. A true and correct copy of the February 3rd letter is attached as **Exhibit G**.

25.    By letter dated February 6, 2003, Mr. Paquet notified Mr. Clarkin that, after reviewing his statement and one received from Professor Barker, he and Dean Kuszaj had decided to refer the case to the College Hearing Board for resolution, and that a formal hearing had been scheduled for February 13, 2003. The letter expressly stated that Board members and any Procedural Advisor assisting Mr. Clarkin in preparing for the hearing "*operate under a strict code of confidentiality*." (emphasis supplied). A true and correct copy of the February 6th letter is attached as **Exhibit H.**

26.    On February 13, 2003, the College Hearing Board held a hearing on Professor Barker's cheating charge. Despite the fact that the formal notices (**Exhibits E and G**) specifically charged Mr. Clarkin with a single violation of the Wheaton Honor Code for having allegedly copied answers to a quiz given on December 5, 2002, the December 5, 2002 quiz was hardly mentioned during the hearing. Instead, the emphasis on the part of the Board was on the

5

final exam, in connection with which Mr. Clarkin had not been formally accused of cheating, and on Mr. Clarkin's entire academic performance for the semester in Astronomy 140. No evidence was introduced at the hearing establishing through direct, eyewitness testimony that Mr. Clarkin accessed the class Internet website to copy answers to the December 5th test while taking the test, nor was there any evidence offered beyond Professor Barker's unsubstantiated suspicions to support a finding that Mr. Clarkin had cheated on the test.

27.    Despite the lack of direct evidence and evidence that the questions and answers to the December 5th test had been posted on the class website *before* Mr. Clarkin took the test that day, the College Hearing Board nevertheless found, purportedly by a preponderance of the evidence, that Mr. Clarkin had copied answers to the test. A true and correct copy of the Board's February 14, 2003 letter to Mr. Clarkin notifying him of the Board's decision to find him responsible and, because of a prior Honor Code violation, suspending him from Wheaton for the spring semester 2003, is attached as **Exhibit I**.

28.    Mr. Clarkin appealed the sanction of suspension to Wheaton's President, which appeal was denied.

29.    On or about February 20, 2003, Mr. Clarkin appealed the Board's decision in accordance with its procedures on the ground that the Board's consideration of and focus on matters unrelated to the December 5th quiz (i.e. the final exam and Professor Barker's suspicions that he had been cheating all semester) rendered the hearing procedurally unfair. His appeal was denied.

30.    By letter dated March 10, 2003, Dean Kuszaj notified Mr. Clarkin of his disciplinary suspension for spring semester 2003, effective February 25, 2003, and outlined how the suspension would be reflected on his Wheaton permanent record. A true and correct copy of the March 10th letter is attached as **Exhibit J**.

31.    By letter dated September 16, 2003, Dean Kuszaj acknowledged to Mr. Clarkin's
father, that in the event Wheaton were to be contacted by another institution for purposes of
possible graduate study and asked if Mr. Clarkin had ever been subject to disciplinary action, it
would respond in the affirmative. A true and correct copy of the September 16, 2003 letter is
attached as **Exhibit K.**

## COUNT I

### (Breach of Contract)

32.    Mr. Clarkin incorporates and realleges, as if fully set forth in this Paragraph, the
allegations of paragraphs 1 to 31 above.

33.    Article V of the Student Government Association Constitution of Wheaton
College sets forth the institutions and policies which maintain the Wheaton College Honor Code.
A true and correct copy of the College Hearing Board and Judicial Procedures ("Procedural
Rules") from Wheaton's Internet website is attached as **Exhibit L.**

34.    Among other things, the Procedural Rules provide that:

    (i)    Any student accused of violating the Honor Code ... shall have the right to
appear before ... the College Hearing Board. Id., Preamble;

    (ii)    The College Hearing Board "shall perform [its] functions according to the
procedures outlined in these By-Laws to ensure fair treatment for
everyone involved. Id.;

    (iii)    A student who has violated the Honor Code is "expected to report" an
alleged violation in writing to the Office of the Dean of Students. Id. at
¶D (1)(b);

    (iv)    A "faculty member who has witnesses or has knowledge of a violation of
the Honor Code" is "expected to report" an alleged violation in writing to
the Office of the Dean of Students. Id. at ¶D (1)(c);

    (v)    "*Regardless of whether the accused report themselves or not,* the
person(s) who have witnessed or have knowledge of violations shall

7

submit a written, dated, and signed report of the alleged violation to the Dean of Students." Id. at ¶D(2)(a) (emphasis supplied);

(vi)   "The respondent shall receive in writing from the Dean or Associate Dean of Students a statement of charges *with sufficient particularity to enable the student to prepare a defense*." Id. at ¶D(2)(g) (emphasis supplied);

(vii)  The respondent *shall be presumed innocent until found responsible*. The standard the Board shall use to determine responsibility shall be a preponderance of the evidence. The decisions of the Board shall be based upon *evidence and testimony presented at the hearing*." Id. at ¶D(2)(h) (emphasis supplied); and

(viii) All those permitted to attend a hearing "will be reminded by the Chair of the College Hearing Board that everything stated is confidential. Any violation of confidentiality shall be subject to review by the ... Board." Id. at ¶D(3)(h).

35.   Mr. Clarkin reasonably expected that Wheaton would abide by the rules it set for itself and students in the Procedural Rules and that disciplinary proceedings on the cheating charge brought by Professor Barker would be conducted with basic fairness.

36.   By providing for hearings in its Procedural Rules, Wheaton entitled Mr. Clarkin to a hearing and adjunct proceedings that substantially observed the Procedural Rules.

37.   In exchange for payment of tuition and his compliance with college rules, Wheaton agreed not to act arbitrarily and capriciously in disciplining Mr. Clarkin for violations of the Honor Code.

38.   Wheaton failed to meet Mr. Clarkin's reasonable expectations in the conduct of the disciplinary proceedings with respect to his alleged violation of the Honor Code, breached its contract with Mr. Clarkin arising from the Procedural Rules, and failed to conduct his hearing with basic fairness.

39.   Wheaton failed to provide Mr. Clarkin with a statement of charges with sufficient particularity to enable him to prepare a defense. Neither the letter of December 16, 2002 nor the letter February 3, 2003 apprised him of the cheating charges that were leveled against him at the

8

February 13, 2003 hearing involving the final exam and the broader, completely unsubstantiated charge that he had cheated repeatedly on tests in Astronomy 140 over the course of the entire semester.

40.      Wheaton failed to conduct the February 13, 2003 hearing with basic fairness. Instead of addressing the narrow charge on which the hearing was supposed to have been based – that Mr. Clarkin had copied the answers to the December 5, 2002 quiz – the hearing focused on charges that had not been brought against Mr. Clarkin: that he had cheated on his final exam and been cheating on tests over the entire course of the semester. Because such charges were not mentioned in Wheaton's letters of December 5 and February 3, Mr. Clarkin was not prepared to rebut them. They were entirely unsubstantiated, and the receipt of "evidence" accusing him of cheating on occasions other than December 5th was grossly unfair to Mr. Clarkin, constituted character assassination, and severely prejudiced his case by suggesting that, if he cheated on the final exam and on other tests, he must have cheated on the December 5th test as well.

41.      Wheaton failed to substantially comply with the Procedural Rules and failed to provide a disciplinary process that met Mr. Clarkin's reasonable expectations and one meeting the test of basic fairness because, instead of presuming that he was innocent of the charge of cheating on the December 5th test, the Board assumed precisely the opposite: that he had been cheating all semester long.

42.      Wheaton failed to substantially comply with the Procedural Rules and failed to provide a disciplinary process that met Mr. Clarkin's reasonable expectations and one meeting the test of basic fairness because the Board's decision, instead of being based on evidence and testimony concerning the December 5th test, was based on evidence concerning charges of cheating that were not before the Board.

9

43.    Wheaton failed to substantially comply with the Procedural Rules and failed to provide a disciplinary process that met Mr. Clarkin's reasonable expectations and one meeting the test of basic fairness because there was no credible evidence to support the Board's decision that Mr. Clarkin had cheated on the December 5th test, and hence it was not based on a preponderance of the evidence, as required by the Procedural Rules.

44.    Wheaton breached its contract with Mr. Clarkin by acting towards him in an arbitrary and capricious manner.

45.    As a direct and proximate result of Wheaton's breach of contract, Mr. Clarkin has suffered substantial damages.

## COUNT II

### Tortious Interference
### With Advantageous Relations

46.    Mr. Clarkin incorporates and realleges, as if fully set forth in this Paragraph, the allegations of paragraphs 1 to 45 above.

47.    As a student, Mr. Clarkin enjoyed an advantageous associational connection and relation with Wheaton.

48.    Professor Barker knowingly induced Wheaton to break that associational connection by suspending Mr. Clarkin for the spring semester 2003 by falsely accusing him, without any factual basis, of repeated acts of cheating.

49.    Professor Barker's actions were outside the course of his duties as a Wheaton professor and, in addition to being intentional, were improper in motive and means in that they were prompted by a spiteful, malignant purpose unrelated to Wheaton's legitimate interest in disciplining students who actually cheat: namely, (a) a desire to single Mr. Clarkin out for disciplinary action based on personal animosity towards and dislike of Mr. Clarkin, (b) a

10

fundamental opposition to providing students with Attention Deficit Disorder reasonable accommodations in the form of un-timed testing and the right to take tests in a quiet place outside of his presence, and (c) an unfounded and baseless belief that Mr. Clarkin was using the reasonable accommodations Wheaton afforded him in order to cheat.

50.    Professor Barker acted with actual malice towards Mr. Clarkin (a) by deliberately withholding from Mr. Clarkin his suspicions that he was cheating, (b) by punishing him for his refusal to admit that he was cheating when, earlier in the semester, in violation of the Procedural Rules, he allowed a female student in Mr. Clarkin's class who admitted to cheating to avoid disciplinary action, and (c) by engaging in an elaborate game of "gotcha", setting a "trap" to catch Mr. Clarkin cheating by intentionally posting the test questions and answers on the class website in advance of the December 5th test so that, if Mr. Clarkin's answers, after studying the questions and answers (or, better yet, memorizing them) were at all similar to those he posted, he could claim that he had the "proof" he needed to confirm his suspicions that Mr. Clarkin was cheating, knowing that Mr. Clarkin's answers would be enough to support the cheating charge regardless of whether he had actually cheated or not.

51.    As a direct and proximate result of Professor Barker's malicious actions Mr. Clarkin has suffered permanent and substantial damages.

COUNT III

(Invasion of Privacy)

52.    Mr. Clarkin incorporates and realleges, as if fully set forth in this Paragraph, the allegations of paragraphs 1 to 51 above.

53.    Mr. Clarkin enjoys a right against unreasonable, substantial or serious interference with his privacy.

11

54.    Under the Procedural Rules, Mr. Clarkin's disciplinary proceeding was strictly confidential, and all those who participated in such proceeding owed Mr. Clark a duty of confidentiality.

55.    Less than a week after the February 13, 2003 hearing, Mr. Clarkin, while eating in the Wheaton dining hall, observed the student who took transcription during his hearing seated with a friend who had not been present at the hearing. Mr. Clarkin observed the student who participated in the hearing pointing him out as he spoke to the other student at the table.

56.    When Mr. Clarkin informed Wheaton's President during his appeal hearing that at least one member of the Board had disseminated confidential information about the hearing to the larger Wheaton community, and that numerous individuals were aware of the Board's determination, she became very upset. After an investigation, President Marshall admitted to Mr. Clarkin that a breach of confidentiality had indeed occurred, but sought to dismiss/minimize the invasion of privacy as being the result of a "miscommunication."

57.    Information about Mr. Clarkin of a highly personal nature – that he had been suspended for a semester for cheating – has been disseminated. Such disclosures did not further Wheaton's legitimate interests in enforcing its Honor Code and constituted an Honor Code violation.

58.    The unauthorized and unjustified dissemination of private, confidential information concerning the hearing has damaged Mr. Clarkin by exposing him to ridicule and contempt from his fellow students, and by causing him great embarrassment and substantial emotional distress and anguish. His discomfort became so great as to cause him to cease eating his meals in the Wheaton dining halls with his fellow students.

12

## COUNT IV

### (Violation of the Americans with Disabilities Act)

59.    Mr. Clarkin incorporates and realleges, as if fully set forth in this Paragraph, the allegations of paragraphs 1 to 58 above.

60.    As a person with Attention Deficit Disorder, Mr. Clarkin is a member of a class of disabled persons protected under the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq. ("ADA")

61.    Wheaton is a program or activity receiving Federal financial assistance.

62.    Mr. Clarkin has been subjected to unwelcome and severe harassment based on his disability in that Professor Barkers's decision to charge Mr. Clarkin with cheating and to initiate proceedings against him under Wheaton's Honor Code was based on Mr. Clarkin's disability, rather than on Mr. Clarkin's conduct.

63.    The harassment to which Mr. Clarkin has been subjected as a result of his disability constitutes discrimination under the ADA, had the purpose or effect of unreasonably interfering with his performance as a student, caused him to suffer a loss of educational and professional opportunity, and has damaged his physical, mental and emotional well-being.

## COUNT V

### (Violation of Section 504 of the Rehabilitation Act)

64.    Mr. Clarkin incorporates and realleges, as if fully set forth in this Paragraph, the allegations of paragraphs 1 to 63 above.

65.    Mr. Clarkin is an "otherwise qualified individual" under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a)("Rehabilitation Act").

13

66.    Solely by reason of his disability, Mr. Clarkin has been excluded from participation in, denied the benefits of, and/or been subjected to discrimination by Wheaton in violation of the Section 504 of the Rehabilitation Act.

67.    The discrimination to which Mr. Clarkin has been subjected as a result of his disability had the purpose or effect of unreasonably interfering with his performance as a student, caused him to suffer a loss of educational and professional opportunity, and has damaged his physical, mental and emotional well-being.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Timothy Clarkin requests that this Court:

A.    Enter judgment declaring that defendant Wheaton College breached its contractual obligations to him (Count I);

B.    Enter judgment declaring that defendant Wheaton College discriminated against him in violation of the Americans With Disabilities Act and Rehabilitation Act (Counts IV and V);

C.    Enter judgment declaring that defendant Timothy Barker tortiously interfered with his advantageous relationship with Wheaton;

D.    Enter judgment declaring that the Doe defendants have violated his right to privacy;

E.    Award him the actual damages he has suffered as a result of Wheaton's breach of contract;

F.    Award him the actual damages he has suffered as a result of Timothy Barker's tortuous interference with advantageous relations;

G.    Award him the actual damages he has suffered as a result of the Doe defendants' invasion of his right to privacy;

14

H.  Award him the actual damages he has suffered as a result of Wheaton's violations

of the ADA and Rehabilitation Act.;

I.  Award him the costs of this action, including reasonable attorney's fees; and

J.  Grant such other different and further relief as the Court deems appropriate.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES
THAT ARE TRIABLE BY JURY AS A MATTER OF RIGHT

TIMOTHY CLARKIN
By his attorney,

Diane P. Caggiano, Esquire
BBO #644340
Law Offices of Diane P. Caggiano
404 Main Street
Centerville, MMA 02632
(508) 775-4560

Dated:

15

EXHIBIT A

# Accommodation Request Form

Name: _Timothy Clakin_     Year: _2005_

Campus Address: _110 East Meadows_ Phone: _X 4858_

Date of Request: _9/4/02_     Box #: _0748_

Please list all instructors you want letters sent to:

Name: _Fichera_     Course: _Basic Italian_

_Devine_     _Public Speaking_

_Barker_     _Solar Systems_

_Freeman_     _Micro_

_____     _____

_____     _____

Please list the accommodations you need: _Extended Time, Location_

_____

_____

_____

_____

_____

☑ I have provided the Advising Center with appropriate documentation in support of these accommodations.

☐ I have discussed these accommodations with the Assistant Dean for College Skills

**Accommodation letters will be sent directly to your campus mail box.**

_____     _9/4/02_
Student Signature                 Date

# EXHIBIT B

# Wheaton College

Advising Center
Wheaton College
Norton, MA 02766

To:    Professors Fichera, Devine, Barker and Freeman

From:  Dean Marty Bledsoe *MB*
       Asst. Dean for College Skills

RE:    Timothy Clarkin

Date:  September 5, 2002

Timothy Clarkin, a student in your class, has a documented learning difference and is therefore requesting the following accommodations:

-Extended time for tests and quizzes
-A separate, distraction-free testing location

Tim's testing indicated distractibility with a short attention span. His scores increased dramatically when given extra time to process what he reads.

Timothy is a student with solid academic potential who has worked hard to learn strategies that will offer an opportunity to compensate for this disability. Your cooperation is greatly appreciated. If you have any questions or concerns, please feel free to call me in the Advising Center at Wheaton College by phone; (508) 286-8215 or by email; mbledsoe@wheatonma.edu.

# EXHIBIT C

WHEATON COLLEGE    NORTON, MASSACHUSETTS    WHEATON HOM

## Wheaton

**Faculty profiles**

--------

**Wheaton catalog**

**Course schedule**

**Academic calendar**

# TIMOTHY BARKER

**Professor of Astronomy, Director of Science Programs**

**Office:** Science Center B 205
**Phone:** (508) 286-3975
**Fax:** (508) 286-8278
**Email:** tbarker@wheatoncollege.edu



### Department(s) and Program(s)

Astronomy
Physics

### Degrees

Ph.D., University of California, Santa Cruz, 1974
B.A., Swarthmore College, 1969

### Main Interests

Astronomy (I own a 32-inch telescope on Cape Cod and enjoy doing "amateur" astronomy with it and inviting Wheaton students to look through it. I'm also do snorkeling, radio control glider and helicopter flying, paragliding, and enjoy tennis and movies.

### Research Interests

I have observed extensively with the large telescopes at Kitt Peak National Observatory and with NASA's International Explorer Satellite, studying planetary nebulae (the material left behind by stars when they die), but my main research interests have shifted to projects that can be done using the equipment on the Observing Deck on the roof of the Science Center. We have a total of nine computerized telescopes, seven of which are equipped with superb CCD cameras; this is one of the best facilities for undergraduate astronomy education in the country. Although the primary purpose of these telescopes is to give all introductory students the chance to use modern astronomical equipment, I am planning to also use them for research projects such as searching for near-earth asteroids, main-belt asteroids, Kuiper-Belt Objects, and supernovae in nearby and distant galaxies.

### Teaching Interests

I'd like to see every Wheaton student take at least one astronomy course, and I'm delighted that so many do take astronomy. Many beginning students believe that they are weak in science, and I enjoy helping them to discover that they can be very good at astronomy and can find the subject exciting. All astronomy courses taught at Wheaton are now at least partially Web-based, and one, The Universe, is an entire self-contained text. (Please see the Astronomy home page for more information.) The goal of this Web-based approach is to help students learn better and faster outside class, so that more class time can be spent discussing and "uncovering"

the material, rather than just covering it.

## Student Projects

Please see the Astronomy home page for information on our supernova
search program, which more than 10 students have contributed to.
Artificial satellite imaging (Scott Hesser 2001)
Computer/CCD camera software/hardware integration (Scott Hesser 2001,
David Cavossa 2001, Kate Perry 2000)
Student contributions to "The Universe" Web-based text (many)

## Selected Publications, Creative Work or Performances

Spectrophotometry of Planetary Nebulae I. Physical Conditions
(Astrophysical Journal, 219, 914, 1978)

Spectrophotometry of Planetary Nebulae II. Chemical Abundances
(Astrophysical Journal, 220, 193, 1978)

Spectrophotometry of Planetary Nebulae III. Sulfur Abundances
(Astrophysical Journal, 221, 145, 1978)

A Comparison of Continuum and Forbidden-Line Electron Temperatures in
Gaseous Nebulae
(Astrophysical Journal, 227, 863, 1979)

Low Argon Abundances in Three Halo Planetary Nebulae
(Astrophysical Journal, 237, 482, 1980)

The Ionization Structure of the Ring Nebula I. Sulfur and Argon
(Astrophysical Journal, 240, 99, 1980)

The Ionization Structure of the Ring Nebula II. Ultraviolet Observations
(Astrophysical Journal, 253, 167, 1982)

The Ionization Structure of Planetary Nebulae III. NGC 7009
(Astrophysical Journal, 267, 630, I983)

Low Sulfur Abundances in Three Halo Planetary Nebulae
(Astrophysical Journal, 270, 641, 1983)

Chemical Abundances in a New Halo Planetary Nebula
(with K. Cudworth)
Astrophysical Journal, 278, 610, 1984)

The Ionization Structure of Planetary Nebulae IV. NGC 6853
(Astrophysical Journal, 284, 589, 1984)

The Ionization Structure of Planetary Nebulae V. NGC 3242
(Astrophysical Journal, 294, 193, 1985)

The Ionization Structure of Planetary Nebulae VI. NGC 7662
(Astrophysical Journal, 308, 314, 1986)

The Ionization Structure of Planetary Nebulae VII. New Observations of the
Ring Nebula
(Astrophysical Journal, 322, 922, 1987)

The Ionization Structure of Planetary Nebulae VIII. NGC 6826
(Astrophysical Journal, 326, 164, 1988)

The Ionization Structure of Planetary Nebulae IX. NGC 1535
(Astrophysical Journal, 340, 921, 1989)

The Ionization Structure of Planetary Nebulae X. NGC 2392 (Astrophysical

Journal, 371, 217, 1991)

Discovery of Supernova 1994U in NGC 4948
(International Astronomical Union Circular #6011, June, 1994)

Wheaton's Quest for Supernovae
(Fall, 1994 issue of CCD Astronomy cover story)

This page is maintained by Timothy Barker. Last updated on 7/9/03.
Questions about this page? Use our query form.

EXHIBIT D

# Wheaton ▶ Webmail

**Date:** Mon, 9 Dec 2002 09:01:02 -0500
**From:** Tim Barker <tbarker@wheatonma.edu>
**To:** tclarkin@wheatonma.edu
**Subject:** Solar System Quiz

Dear Tim,

Please see me during my office hours this afternoon (4-5:30). If this time is not possible, please email me with an earlier time today that's possible for you; I can be available any time after 11:30.

I'm concerned that it appears that you've been using the answers that I've been putting on the web when you take your quizzes outside of the classroom. For this reason, please bring your old quizzes when you see me today.

--
Timothy Barker, Professor of Astronomy
Wheaton College, Norton, MA 02766
(508) 286-3975 (work)
(508) 285-4478 (home)
(508) 286-8278 (fax)

# EXHIBIT E

Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

# Wheaton

December 16, 2002

Mr. Timothy Clarkin
Wheaton Box W 748
Wheaton College
Norton, Massachusetts  02766

Dear Timothy:

This letter is to advise you that you are being accused of violating the Honor Code of Wheaton College. The Honor Code, which you agreed to uphold when you enrolled, states that "As members of the Wheaton Community, we commit ourselves to act honestly, responsibly, and above all, with honor and integrity in all areas of campus life." Specifically, you are being charged by Professor Tim Barker with copying answers to a quiz given in Astronomy 140 on December 5, 2002 from class notes posted on the Wheaton network. This letter is a formal notice of these charges.

I regret that this matter cannot be resolved before the January Break begins but the Dean's Office did not receive notification of this alleged violation until December 10, 2002. Because the College Hearing Board will not reconvene until the beginning of spring semester 2003, this charge cannot be heard until that time. Although this notice will undoubtedly cause you concern now, it is important for you to know that such a charge is pending when you return.

You may wish to review the Judicial Procedures and the by-laws of the College Hearing Board, which are published in the Wheaton College Student Handbook and Academic Planner, or available upon request from the Dean of Students Office. If you have any questions about this matter you may contact me before or during the break. Professor Dee Grimm in the Athletics Department, will be available at the start of the spring semester to help you prepare a statement in response to the formal charge, which I will send to you on campus when you return.

Sincerely,

Jack Kuszaj
Associate Dean of Students

Christopher Paquet
College Hearing Board Chair

wc

cc: Sue Alexander

# EXHIBIT F

I received an E-Mail from Mr. Barker on Monday, Dec.9 requesting that I see him regarding a quiz that had been given the previous Thursday. I went to his office immediately and was shocked to learn that the purpose of the meeting was for him to accuse me of having cheated on that quiz. I did not then nor have I ever done what he accused me of.

In further discussions about this issue, I learned that Mr. Barker had been suspicious of my honesty throughout the term. I was made to feel that he had already convicted me of the crime he suspected I had committed. I am standing here before you people today, having had this most unpleasant experience hang over my head throughout the Christmas break, because Mr. Barker thinks some-thing. Beacause he has a feeling. His intuitions are not fact. I repeat - I am not a cheat.

It is Mr. Barker's modus operandi to post on the internet the contents of his classes. We are instructed to go to his web site to get notes that we might have missed in a previous class and also to be informed whether he will be conducting his next scheduled class. It is our responsibility to know whether a scheduled class will take place or not. I logged on to his web site before the Dec 5. class to a) ascertain that there would be a class and b) to check the notes from the previous class which I had missed.

After the notes on the site was a heading "Questions On Today's Assignment" followed by a series of questions and answers. I read them and concentrated on the answers. I certainly had no idea that this was the test I was about to take. It certainly

would be odd for a teacher to publish beforehand a test he intended to give. My so-called cheating is a result of a very good memory.

There was one question and answer which I did not quite understand. Beause of that, I went over the question and the answer repeatedly. Unfortunately, I remembered the answer word for word as Mr. Barker had written it. It was this accuracy in my response which triggered Mr. Barker's suspicions.

I am allowed to take tests outside the class room due to my Attention Deficit Condition. This fact seems to bother Mr. Barker, it seems, because if I am out of his sight, I must be sneaking off to find a computer so that I can copy answers. I told him once I would be in an area which, it turned out, was too crowded for me to concentrate. I switched to the library and Mr. Barker didn't find me where I had said I was going. Had I realized that he was determined to catch me in a duplicitous act, I certainly would have told him that I planned on finding a quieter place. Another time I was where I said would be but when he looked for me there, he could not find me. I'm embarassed to confess, but sometimes I have to go to the bathroom.

Am I to be punished for taking advantage of a state mandated policy which offers me help in concentration? Believe me, I would change places with anyone who does not have my so called advantage of testing in solitude. This condition has caused me much trouble and embarassment and even anguish throughout me entire academic life.

Am I to be punished because one man suspects, without one shred of proof, that I am a cheat?

Mr. Barker told me he did not have copies of any of the quizzes I took throughout the year but in the light of my Dec 5 transgression, he wanted to review the entire term's work. He would certainly find more indications of my dishonesty. Why would I keep the tests? I discarded them as soon as I got them back and checked the mark. Yesterday's test is yesterday's news. Of course my not having these tests must be further indication of by guilt. At least that's what Mr. Barker feels. Am I to be punished because I don't save meaningless pieces of paper?

If he had suspected me all term, why did he wait til the end to accuse me? If he publishes a test before it is given is it a crime for a student to review it?

In summation, there is no proof of malfeasence on my part, only one person's suspicions have brought me to this hearing. I state it again, unequivically, I AM NOT A CHEAT!

# EXHIBIT G

Wheaton College
Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

# Wheaton

February 3, 2003

Mr. Timothy Clarkin
Wheaton Box W 0748
Wheaton College
Norton, Massachusetts 02766

Dear Timothy:

This letter is to advise you that you are being accused of violating the Honor Code of Wheaton College. The Honor Code, which you agreed to uphold when you enrolled, states that "As members of the Wheaton Community, we commit ourselves to act honestly, responsibly, and above all, with honor and integrity in all areas of campus life." Specifically, you are being charged by Professor Tim Barker with copying answers to a quiz given in Astronomy 140 on December 5, 2002 from class notes posted on the Wheaton network.

You received written notification of these charges at home during the January break. At that time I told you that, because the Dean of Students Office did not receive notification of this alleged violation until December 10, 2002, the charge could not be heard until the College Hearing Board reconvened at the start of the spring semester. I am in receipt of your written response to the charge and will be in contact with you after College Hearing Board Chair Christopher Paquet and I have reviewed it and determined whether your case will be heard.

This letter is a formal notice of these charges. Will you please sign and return the enclosed copy of the notification form to the Dean's Office. Your signature is in no way an admission of guilt and the prompt return of this form insures that either an informal or a formal resolution of the charges will result in a timely manner.

All charges of Honor Code violations do not necessarily result in a hearing. Charges are first reviewed by the Associate Dean of Students and by the Hearing Board Chairperson. To facilitate this review, please submit a signed response to the charges--either indicating that you believe them to be just and accurate, or that you believe they are not justified. In addition, please write your own account of the events or actions in question. Deanna Grimm, Professor of Physical Education and a former member of the Hearing Board, is available to help you prepare your statement, which should be submitted no later than 12:00 noon on Thursday, February 6, 2003.

Timothy Clarkin
February 3, 2003
page two

As I told you in my letter dated December 16, 2002, you may want to review the Judicial Procedures and the by-laws of the College Hearing Board which are published in your Student Handbook. Copies are also available in the Dean's Office. You will notice that you are entitled to a prompt and confidential hearing, which you may request even if one is not required by the Dean and Chairperson after reviewing the preliminary evidence.

If these allegations are referred to the College Hearing Board for a resolution, you will be notified of the date, time, and place of your hearing. The hearing must be held no less than three academic days and not more than fifteen academic days from the time that your written statement is received in the Dean's Office. To prepare for a hearing you are entitled to a Procedural Adviser, a student advocate assigned by the College Hearing Board who will help you present your case. You may also call witnesses (including one character witness) provided that you notify the Hearing Board Chairperson of their identity at least twenty-four hours in advance of the hearing. At a scheduled hearing, you must appear in person to present your case and to respond to questions from the members of the Hearing Board. If you are absent from the hearing or refuse to answer questions during the hearing, the Board may assign a sanction as it sees fit. If you fail to submit a written statement by the date I mentioned above, the Board may also interpret that lack of response as it sees fit and assign an appropriate sanction.

Since it is important that you understand your rights and responsibilities within the college's judicial process, please feel free to contact Professor Deanna Grimm (ext. 3995), or Christopher Paquet, the College Hearing Board Chairperson at 286-5311 in Keefe 110B with any questions.

Sincerely,

Jack Kuszaj
Associate Dean of Students

Christopher Paquet
College Hearing Board Chair

JK/wc
Enclosure

cc:    Deanna Grimm, College Hearing Board Adviser

Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

FEB 6 2003

**DEAN OF STUDENTS**

# Wheaton

Timothy Clarkin
February 3, 2003
page 3

I have received notification that I am being charged with a violation of the Honor Code. I understand that my signature here does not in any way mean an admission of responsibility and that I can seek assistance from Professor Deanna Grimm, in order to prepare a statement in response to this accusation.

2/6/03
date

student's signature

# EXHIBIT H

Wheaton College
Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

February 6, 2003

# Wheaton

Timothy Clarkin
Wheaton Box 748
Wheaton College
Norton, Massachusetts  02766

Dear Timothy:

After reviewing statements we received from you and from Professor Tim Barker, who has charged you with a violation of the Honor Code, the Associate Dean of Students and I have determined that this case should be referred to the College Hearing Board for resolution. The formal hearing has been scheduled for Thursday, February 13, 2003, at 5:00 p.m. in the Park Hall Conference Room located in the Park Hall lobby. Please be ready in the lobby of Park Hall at 4:45 p.m.

Please review the Judicial Procedures outlined in your Student Handbook if you have not already done so. Remember that you are entitled to call witnesses on your behalf (including one character witness) as long as you notify me of their names twenty-four hours in advance of the hearing. If you fail to appear for the hearing, the Board may interpret your absence as it sees fit and assign a sanction.

You are entitled to have the assistance of a Procedural Adviser to prepare for the hearing. College Hearing Board Procedural Advisers are selected by the members of the College Hearing Board through an application/interview process. They are not members of the Board, but like Board members, the Procedural Advisers operate under a strict code of confidentiality. Procedural Advisers are assigned to the accused and the accuser in order to help all parties by explaining the procedures involved in a case, by assisting each party in preparing written statements, and most importantly by providing moral support to the individuals involved. You may waive your right to have a Procedural Adviser. The Procedural Adviser is present during the hearing for support, but she is in no way responsible for presenting a case to the Board. The Procedural Adviser's main responsibilities are to advise and support an individual during the preparation of the case.

Timothy Clarkin
February 6, 2003
page two

Your Procedural Adviser is Geoffrey Bickford. He lives at 44 Howard Street, phone 508-286-5339. Please contact him immediately. If you are choosing to waive your right to a Procedural Adviser, please sign and return the enclosed statement to me by noon Tuesday, February 13, 2003. If you have any questions about the judicial process, please feel free to contact me.

Sincerely,

Christopher Paquet
College Hearing Board Chair

wc
Enclosure

Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

FEB  6 2003

**DEAN OF STUDENTS**

# Wheaton

Timothy Clarkin
February 3, 2003
page 3

I have received notification that I am being charged with a violation of the Honor Code. I understand that my signature here does not in any way mean an admission of responsibility and that I can seek assistance from Professor Deanna Grimm, in order to prepare a statement in response to this accusation.

$\underline{\hspace{0.5em} 2/6/03 \hspace{2em}}$
date

$\underline{\hspace{8em}}$
student's signature

# EXHIBIT I

Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

February 14, 2003

Mr. Timothy Clarkin
Wheaton Box W0748
Wheaton College
Norton, Massachusetts 02766

# Wheaton

Dear Timothy,

This is to confirm the results of your College Hearing Board case heard on Thursday, February 13, 2003.

In response to the charge of copying answers to a quiz given in **Astronomy 140** on December 5, 2002 from class notes posted on the Wheaton network, brought by Professor Tim Barker, the Board found you responsible by a preponderance of evidence.

In determining the sanction for this violation of the Honor Code, the Board must consider the fact that you appeared before the Board on November 15, 2001 and were found responsible for the charge of physical assault. At that time you were suspended for the remainder of the 2001 - 2002 academic year; however, the Board agreed to hold your suspension in abeyance. At that time, the Board also placed you on disciplinary probation for the 2002 - 2003 academic year and told you that, if you appeared before the Board again during this period and were found responsible for another Honor Code violation, you would risk suspension from the college. Because the Board's finding of responsibility in this case constitutes a violation of the conditions of your disciplinary probation, the Board has determined that the sanction for this most recent Honor Code violation to be suspension from the college for spring semester 2003.

If you intend to appeal this sanction based on any procedural violations, you must send me a letter stating your reason for appeal within five academic days of your receipt of this letter. The Appellate Board then has a maximum of ten academic days in which to schedule and review the case. Please refer to the judicial by-laws of the Student Government Association in your **Student Handbook and Academic Guide** (p. 163) for a complete description of the basis for appeal and the appeals process. If you intend to appeal the sanction itself, you may do so directly to President Marshall within five days of the receipt of this letter.

Finally, I want to share with you the concern of the Board for the appropriateness of your behavior at the hearing last night and the difficulty you displayed, at times, in controlling your emotions. I want you to understand that, should you choose to appeal the Board's decision, you may to remain on campus and continue with your normal activities pending its outcome. If, however, your behavior becomes a concern or is problematic, you will be required to leave campus until a decision regarding your appeal is made.

If you have any questions about the hearing process or your sanctions, please address them to me or to Christopher Paquet.

Sincerely,

Jack Kuszaj
Associate Dean of Students

cc: Christopher Paquet, College Hearing Board Chair
Sue Alexander, Dean of Students

# EXHIBIT J

Wheaton College
Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

March 10, 2003

**Wheaton**

Mr. Timothy Clarkin
420 East 54th Street
New York, New York  10022

Dear Timothy,

This letter will confirm your disciplinary suspension from the college for spring semester 2003 effective February 25, 2003, for a violation of the College Honor Code that occurred at the end of fall semester 2002 and to outline how your record and account will reflect this change in your status.

Effective February 25, 2003, you have been placed on disciplinary suspension from the college for spring semester 2003 by the College Hearing Board. This means that you are restricted from the campus and you may not attend classes or college-sponsored events on or off campus during the period of your suspension.

You have been assigned the grade of "C-" for your fall semester class, **Astronomy 140**, as determined by Professor Tim Barker. You have been assigned the grade "WD" or "Withdrawn" for your spring semester classes, and your status at the college for the spring semester has been changed to "Withdrawn." Your room keys and student ID card should be returned to me in the Dean of Students Office via U.S. Postal Service as soon as possible.

Your account in the Office of Student Financial Service will be adjusted as follows:

- Tuition for the spring semester will be reimbursed in full.
- Room and Board for the spring semester will be prorated effective February 25, 2003.

You are eligible to return to Wheaton and resume studies for fall semester 2003. If you intend to return to Wheaton for fall semester 2003, you should contact me no later than August 1, 2003 so that the appropriate arrangements can be made for your return.

If you have questions about what I have discussed in this letter, please contact me.

Sincerely,

Jack Kuszaj
Associate Dean of Students

JK/jh
cc: Thomas and Barbara Clarkin

EXHIBIT K

Wheaton College
Norton, Massachusetts 02766-0930
(508) 285-7722
FAX (508) 285-8270

# Wheaton

September 16, 2003

Mr. Tom Clarkin
Clarkin International Ltd.
420 East 54th Street
Suite 23B
New York, New York 10022

Dear Mr. Clarkin,

Thank you for your recent letter in which you inquire about the status of your son, Timothy, and how his
college record reflects his suspension for spring semester 2003 for violation of the college's Honor Code
and related issues.

In cases where a student has been found responsible for an academic violation of the Honor Code, it is the
practice of the college to place a letter in the student's academic file in the Advising Center indicating that
the student was found responsible for such an Honor Code violation. This letter remains in the student's
academic file until their graduation from Wheaton at which time it is removed if the student is subject to no
further academic violations of the Honor Code.

The enrollment status of students who have been suspended for an Honor Code violation is indicated as
"Leave" for internal purposes by the college for the period of their suspension. There is no notation on the
student's transcript in the Office of the Registrar. It is the student's responsibility to respond to any
questions raised concerning their enrollment status. The college does not share the details of a student's
transcript or college record and will refer any questions concerning a student's enrollment status directly to
the student for their response.

If the college is contacted by another institution (for the purposes of possible transfer or graduate study)
inquiring whether a student has been subject to any disciplinary action while enrolled at Wheaton, our
practice is to affirm that the student was found responsible for an Honor Code violation or to answer in the
affirmative if the question is, "Has the student ever been subject to disciplinary action?" If another
institution inquires about whether a student is currently in good academic or social standing, it is the
practice of the college to report the student's current enrollment status, which for fall semester 2003 in
Timothy's case is academic and social good standing.

Timothy is currently listed as a member of the Class of 2005 with an expected graduation date of May 22,
2005.

I hope I have answered all your questions. If I can be of further assistance, please contact me.

Sincerely,

Jack Kuszaj
Associate Dean of Students

JK/jh

# EXHIBIT L

## Student Life

**student life > honor code > judicial**

**Honor Code**
Plagiarism
Community standards
Technology acceptable use
Off-campus behavior
College Hearing Board & judicial procedures

- - - - - - - -

**Office of Student Life**
Residential Life
Student Activities

**New Student Orientation**
What to pack
Orientation schedule
Dates to remember

- - - - - - - -

**Boston/Providence Connection**

**GATRA**

- - - - - - - -

**College events calendar**

**Student government and clubs**

- - - - - - - -

**Counseling Center**

**Student Health Services**

**Dining**

**Employment**

**Athletics**

- - - - - - - -

**Dean of Students**

**Student Life home**

# COLLEGE HEARING BOARD AND JUDICIAL PROCEDURES

Article V of the Student Government Association Constitution prescribes the institutions and policies which maintain the Wheaton College Honor Code.

## ARTICLE V -- Judicial Branch

The purpose of the Judicial Branch shall be to maintain the Wheaton College Honor Code. The College's judicial policies, practices, and sanctions are designed for the purpose of education and are not to be equated with state or federal laws or the criminal justice system. The disciplinary system seeks to educate students so that they understand both personal freedoms and the limits of belonging to and living in a diverse academic community. Justice Lewis F. Powell, Jr. wrote in a Supreme Court decision: "Education in any meaningful sense includes the inculcation of an understanding in each pupil of the necessity of rules and obedience thereto. This understanding is no less important than learning to read and write. One who does not comprehend the meaning and necessity of discipline is handicapped not merely in his education but throughout his subsequent life? When a student merits censure for his conduct, he is rendered a disservice if appropriate sanctions are not applied." (Goss v. Lopez 419 U.S. 565,593 (1975))

Any student accused of violating the Honor Code or a College policy shall have the right to appear before a two-thirds quorum of the College Hearing Board. The Judicial bodies shall perform their functions according to the procedures outlined in these By-Laws to ensure fair treatment for everyone involved.

The Judicial Branch shall be divided into two sections:
1) College Hearing Board consisting of the College Hearing Officer and the Hearing Board, and
2) the Appellate Board.

## SECTION 1 -- College Hearing Board/College Hearing Officer

### A. Membership of the College Hearing Board

Chair, Vice Chair, Secretary and one Member-at-Large are all matriculated students in good academic and social standing.

**1. Chair**, who shall preside over all cases except when illness or other necessary absences from campus prevent this or when a conflict of interest arises, and then the Vice Chair shall preside. The Chair shall be a voting member of the Board. It is the Chair's responsibility to insure that current and accurate records of proceedings and decisions are maintained in the Office of the Dean of Students.

**2. Vice Chair**, who shall act as Chair in the Chair's absence. The Vice Chair shall assume the duties and responsibilities of the Chair. The Vice Chair shall be a voting member.

**3. College Hearing Board Secretary**, who shall keep concise and accurate records of the hearing proceedings, the decisions, and shall submit those records to the Chair of the College Hearing Board. The College Hearing Board Secretary is also responsible for notifying members of the Board as to the time and place of all College Hearing Board meetings and of taking the minutes of these meetings. The Secretary shall be a voting member.

**4. One Member-at-Large**, who shall be a voting member.

**5. Two faculty members** chosen by the College Hearing Board student members in consultation with the Dean of Students and approved by the faculty Committee on Committees and the Student Government Association Student Senate. Both faculty members are voting members.

**6. An alternate Faculty Member** may serve in the event that one of the standing faculty members cannot attend and shall be a voting member. The alternate Faculty Member shall be any faculty member who has previously served on the College Hearing Board.

**7. The Dean or Associate Dean of Students**, as Advisor to the Board, who will be a non-voting member except in the case of a tie.

### B. College Hearing Officer

The position of College Hearing Officer shall be filled by the Director or an Assistant Director of Student Life.

### C. Jurisdiction

**1. College Hearing Board**

a. Alleged violations of Academic Responsibilities and Standards as set forth in the Honor Code and the Student Handbook such as:

1. Plagiarism (refer to complete explanation of plagiarism in the Student Handbook).
2. Cheating: giving or receiving unauthorized aid on an examination; taking an examination in place of another student; doing assignments for another student or handing in another's work as one's own; conspiring to deceive in academic work; taking an examination in an unauthorized location; bringing unauthorized materials into a closed-book examination room; submitting the same paper for more than one class without the consent of both professors.
3. Violations of the accepted standards governing the use of computers and computerized materials; tampering with secured computer networks or copyrighted programs.
4. Violations of any stated academic standards or regulations put forth by faculty or College departments governing the use of academic facilities or materials.

b. Alleged violations of the Wheaton Community Standards, which state expectations for behavior on the campus, as set forth in the STUDENT HANDBOOK.

c. Alleged violations of any published Wheaton College policies or regulations.

**2. College Hearing Officer**
The College Hearing Officer, together with the Vice Chair of the College

Hearing Board or another designated member of the Board, will conduct informal hearings on minor violations of residence hall or College policies. Examples of minor violations are (but not limited to): failure to cooperate during a fire drill; violation of quiet hours; unauthorized room changes; unauthorized pets; first, or minor violations of the College's alcohol and drug policies; minor violations of the residence hall contract. Decisions about what constitutes a violation to be referred to the Hearing Officer will be made by the Chair of the Hearing Board and the Dean of Students.

Sanctions issued by the Hearing Officer may include: a written warning, fines, reassignment to another room or residence hall, parent notification, removal from the residence halls, mandated community service.

An appeal of a sanction issued by the Hearing Officer may be made by the respondent to the College Hearing Board. In this case the Hearing Board will function as an appellate body, hearing the case in order to determine whether a preponderance of the evidence warranted the Hearing Officer's finding of responsibility. If the Hearing Board upholds the finding, the case will be returned to the Hearing Officer for sanction. The Board may choose to make a recommendation on the severity of the sanction, but the Hearing Officer will decide the sanction for the violation.

### D. Procedures

#### 1. Formal charges of an alleged violation
A member of the community who wishes to pursue formal charges of an alleged violation of the Honor Code, or a College policy, shall report it in writing to the Office of the Dean of Students. The following members of the Wheaton College community are expected to report an alleged violation:

a. a student who has witnessed or has knowledge of a violation of the Honor Code or the academic and community standards of the College

b. a student who has violated the Honor Code

c. a faculty member who has witnesses or has knowledge of a violation of the Honor Code

d. any student organization, club, or committee which has witnessed or has knowledge of a violation of the Honor Code

e. other members of the Wheaton College community who have witnessed or have knowledge of a violation of the Honor Code

#### 2. Pre-hearing
The following procedures shall be followed prior to the hearing of a case in order to assure fair treatment to everyone involved:

a. It is suggested that the person(s) reporting an alleged violation of the Honor Code approach the individual concerned and suggest that they report themselves. Regardless of whether the accused report themselves or not, the person(s) who have witnessed or have knowledge of violations shall submit a written, dated, and signed report of the alleged violation to the Dean of Students.

b. The Dean or Associate Dean of Students shall promptly inform the Chair of the College Hearing Board of alleged violations. The Chair of the College Hearing Board, in conjunction with the Dean, shall formulate the charges to be brought against the respondent after reviewing the written report of alleged violations. They shall note the decision based on evidence submitted, determining if evidence of a violation is sufficient to warrant a hearing.

c. The College Hearing Board shall consider appeals from the respondent

when one believes that one's procedural rights have been violated or when one requests a hearing by the full College Hearing Board. The respondent will be given a specific deadline for responding to the charges.

d. In cases where the evidence is sufficient to warrant a hearing by the College Hearing Board but the conduct could be interpreted as a violation of the standards stipulated by local, state or federal laws, the Chair of the College Hearing Board, the Dean of Students, and the Director of Public Safety will confer on whether the respondent's right to a College Hearing Board hearing is waived. If the right to a College Hearing Board hearing is denied, the responsibility to initiate any further action against the respondent will be vested in the College administration. The respondent will be accorded a fair process by the responsible administrator.

e. In cases where a student is facing criminal charges for a violation committed on campus, the College may choose, but is not required to, hold its disciplinary proceedings in abeyance until after the criminal charges are resolved. In these cases, the Dean may choose to place the student on an interim suspension from the College. (See "Leaves of Absences and Withdrawals").

f. If a student is facing criminal charges for a violation committed off campus, the Dean may choose to impose an interim suspension: 1) to insure the safety and well-being of the College community, or preservation of College property; 2) to insure the student's own physical or emotional safety and well-being; or 3) if the student poses a threat of disruption or of interference with the normal operations of the College. Following the disposition of the criminal charges, the Dean will conduct an administrative hearing to determine the terms of the student's continuing status at the College.

g. The respondent shall receive in writing from the Dean or Associate Dean of Students a statement of charges with sufficient particularity to enable the student to prepare a defense. The respondent will be given a specific deadline for responding to the charges.

h. The respondent shall be presumed innocent until found responsible. The standard the Board shall use to determine responsibility shall be a preponderance of the evidence. The decisions of the Board shall be based upon evidence and testimony presented at the hearing.

i. The Chair of the College Hearing Board shall determine the date, time, and place of the case hearing. The hearing shall normally be held no less than three academic days and not more than fifteen academic days from the original receipt of the respondent's statement in response to the charge. Decisions of all cases involving senior students shall be rendered prior to the Commencement exercises of the academic year in which the alleged violation occurred. Cases involving underclass students shall be continued to the following academic semester if reported during final exams, unless the respondents waive their right in writing of having at least three academic days notice prior to their hearing and if the Board is able to be convened on short notice.

j. Upon determination of the date, time and place of the hearing, the Secretary of the College Hearing Board shall inform the Board of the date, time, and place of the hearing and nature of the case to be heard and shall instruct them to read the materials pertaining to the case in the Office of the Dean of Students prior to the hearing. Both the complainant and respondent shall be notified in writing of the date, time and place of the hearing, and the assignment of procedural advisors to both parties. The notification will normally take place 7 days prior to the hearing date in order to allow both parties sufficient time to prepare.

### 3. Hearing

a. The hearing shall be held on the Wheaton College campus, but shall be closed to the Wheaton College community except to members of the College Hearing Board, procedural advisors, specified witnesses, the respondent and the complainant(s). No attorneys or other outside representatives are permitted in the hearing for any parties involved.

b. Complainants shall attend the hearing and verbally present their side of the case. Both the complainant and the respondent will remain in the room for the entire presentation of evidence. If the complainant does not appear, the College Hearing Board may choose to proceed with the hearing.

c. The complainant shall be entitled to call witnesses on their behalf provided that the Office of the Dean of Students is informed of the identity of the witnesses at least twenty-four hours prior to the hearing. The complainants are limited to one (1) character witness who may appear on their behalf at the hearing. If the complainants choose, they may have other character witnesses submit statements on their behalf at least twenty-four hours prior to the case hearing to be reviewed by the College Hearing Board.

d. The respondents shall be required to appear in person and to present their defense to the College Hearing Board. If the respondent does not appear, the College Hearing Board may choose to proceed and impose an appropriate sanction if they determine one is warranted, however, this sanction shall be suspended for two academic days following the hearing. During these two academic days, the respondent has the right to petition for a second hearing of their case by the Board. The petition shall be made through the Office of the Dean of Students. If the respondent chooses not to petition for a second hearing, the original sanction shall be imposed.

e. The respondents shall be entitled to call witnesses in their behalf provided that the Office of the Dean of Students is informed of the identity of the witnesses at least twenty-four hours prior to the hearing. The respondent is limited to one (1) character witness who may appear on their behalf at the hearing. If the respondents choose, they may have other character witnesses submit statements on their behalf at least twenty-four hours prior to the case hearing to be reviewed by the College Hearing Board.

f. The respondent, complainant and witnesses shall be expected to answer all relevant questions and submit any evidence requested by the Board. If any person chooses to remain silent, members of the College Hearing Board may interpret that silence as they see fit. If any party refuses to submit evidence requested by the Board, the Board may consider the implications of withholding evidence as part of any sanction imposed.

g. Other relevant witnesses or members of the Wheaton College community may be called to the College Hearing Board hearing for advice and information at the request of the Chair of the College Hearing Board. Individuals who fail to comply with a request by the College Hearing Board to appear at a hearing or to provide written testimony, or who otherwise obstruct the hearing process, may be charged with an Honor Code violation.

h. All will be reminded by the Chair of the College Hearing Board that everything stated is confidential. Any violation of confidentiality shall be subject to review by the College Hearing Board.

i. In cases heard by the full Board, all members of the College Hearing Board shall be entitled to vote. Each member of the Board shall have one vote. A simple majority vote of the voting members of the College Hearing Board shall be necessary for deciding a case. The Board will use the

standard of preponderance of the evidence to determine whether or not the respondent should be held responsible for the alleged violation. If a member of the College Hearing Board is involved in a case as the respondent, the complainant or a witness, they shall exempt themselves from the hearing, deliberation and voting on the case. In cases where a member of the Board has other potential conflicts of interest, the Board shall discuss that member's participation in the deliberations and may request that the member be exempted from the case.

**4. Sanctions**

After hearing a case, the Judicial Board shall deliberate in private and shall decide if the respondent student is either responsible, no violation was proved, or not responsible. If no violation was proved or the respondent is found not responsible, there will be no record that s/he was subject to an accusation. If the respondent is responsible for a violation of the Honor Code or of a College policy the College Hearing Board shall impose one or a combination of the following sanctions:

a. for social or disciplinary violations:

- written warning
- fines and/or restitution for damages
- mandated community service or assigned task relevant to offense
- disciplinary probation
- notation in disciplinary or academic file until graduation
- parent/guardian notification of decision
- suspension from College housing
- suspension from the College, held in abeyance
- recommendation to the president for suspension from the College for a specified period of time*
- recommendation to the President for expulsion*
- other sanctions if deemed appropriate:
- restriction from College facilities or activities
- removal from an athletic team
- removal from a campus position
- revocation of a group's charter

b. for academic violations

- loss of credit or failure for the piece of work
- loss of credit or failure in the course for the semester in which the offense occurred
- parent/guardian notification of decision
- notation in disciplinary or academic file until graduation
- notation on permanent record
- recommendation to the President for suspension* from the College for a specified period of time
- recommendation to the President for expulsion*

* (Note that students who are suspended or expelled from the College are not entitled to any refund of tuition and fees and may not complete work for their classes in that semester. A student who is suspended or expelled will be given "withdrawals" for courses in progress.)

Enrollment and continued attendance at Wheaton College is a privilege, not a right. Any sanction which revokes that privilege is intended to protect the campus community or the educational integrity of the College. The College's judicial system has broad educational objectives and follows procedures which are different from state or federal courts. The information contained in these bylaws pertains to campus disciplinary proceedings only. It does not reflect findings or judgements made in any other forum and should not be interpreted to mean that a respondent has been charged

with or found guilty of any criminal offense.

**5. Post Hearing**
The following procedures shall be followed after the hearing of a case to insure fair treatment and confidentiality:

a. Once a decision has been reached, the complainant and respondent shall be informed of the reasons for it and the sanctions, if any. Both the respondent and the complainant shall be informed of the decision in person or by phone by the Chair of the College Hearing Board.

b. The decision and sanctions, if any, normally shall be mailed to the respondent within five (5) academic days of the finding of the decision. The letter shall include the procedure for appealing any alleged procedural violations and shall be sent by the Dean or Associate Dean of Students.

c. If the student has been found responsible and wishes to appeal the case based on alleged procedural violations, a written request must be presented to the Dean or Associate Dean of Students within five (5) academic days of the receipt of the decision of the hearing. Any action assessed by the College Hearing Board shall be held in suspension until acted upon by the Appellate Board.

d. The letter requesting a hearing by the Appellate Board shall state the basis or reasons for the appeal.

e. The Dean of Students shall notify the Chair of the College Hearing Board that the case is being appealed. The complainant in the case will also be notified of the respondent's appeal and invited to submit a statement to the Appellate Board.

f. The Appellate Board has a maximum of ten (10) academic days in which to schedule and hear the appealed case.

g. A copy of the reports, the decision, and the sanctions shall be kept on file in the Office of the Dean of Students for five (5) years. After a five year period the file shall be placed in the Archives and sealed for a period of 50 years. After 50 years access to the file may be obtained only by consent of the Student Government Executive Board.

h. A written summary of all College Hearing Board case hearings in the current academic year shall be available in the Office of the Dean of Students for review by any member of the Wheaton community. All names and dates shall be omitted from the summary to protect the parties involved. The summary shall be available for review within ten academic days following the final decision of the case hearing. A summary of cases heard each semester may be submitted to the Wheaton Wire by the secretary of the Hearing Board.

i. Recommendations to the President of the College for suspension or expulsion shall be sent by the Dean of Students for consideration and implementation if deemed appropriate.

j. The final decision of any judicial case shall be approved by the President of Wheaton College.

## SECTION II -- The Appellate Board

### A. Membership

**1. Chair,** who shall preside over all cases except when due to illness or other necessary absences from campus or when a conflict of interest arises, in which case the Vice Chair shall preside. The Chair shall be a full-time, matriculated student in good academic and social standing. He/she

will be selected by an application process under the authority of the College Hearing Board and must be approved by the Executive Board of the Student Government Association. The Chair shall be a voting member of the Board.

**2. Vice Chair**, who shall act as Chair in the Chair's absence. The Vice Chair shall be a full-time, matriculated student in good academic and social standing approved by the Executive Board of the Student Government Association. The Vice Chair shall be a voting member in all cases heard by the Board.

**3. The Appellate Board Secretary**, who shall keep concise and accurate records of the hearing proceedings, the decisions, and shall submit those records to the Chair of the Appellate Board. The Appellate Board Secretary is also responsible for notifying members of the Board of the time and place of all Appellate Board meetings. The Secretary shall be a full-time, matriculated student in good academic and social standing appointed by the Executive Board of the Student Government Association. The Secretary shall be a voting member in all cases heard by the Board.

**4. Two faculty members** from the Committee on Admissions and Academic Standing. The two faulty members of the Appellate Board shall be elected by the Committee on Admissions and Academic Standing from within the membership. The two faculty members shall be voting members in all cases heard by the Board.

**B. Jurisdiction**

The Appellate Board shall consider all appeals from the respondent or campus groups when one believes that their procedural rights have been violated or in certain extraordinary cases when new evidence can be produced that may affect the decision rendered by the College Hearing Board.

**C. Procedures**

**1. Pre-hearing**
The following procedures shall be followed prior to the hearing of a case and shall be followed in the order in which they are listed to ensure fair treatment:

a. The respondent or campus group shall submit an appeal in writing to the Dean or Associate Dean of Students within five (5) academic days of the receipt of the decision of the hearing. Any action assessed by the College Hearing Board shall be held in abeyance until acted upon by the Appellate Board.

b. The Dean or Associate Dean of Students shall inform promptly the Chair of the Appellate Board of the appeal. The complainant will also be notified of the appeal and given an opportunity to respond to the Appellate Board.

c. The Chair of the Appellate Board shall request all the Hearing Board records of the case being appealed.

d. The Chair of the Appellate Board shall determine the date, time and place of the hearing. The Appellate Board has a maximum of ten (10) academic days in which to schedule and hear the appeal case. Cases involving underclass students shall be continued to the following academic semester if reported within the week of final exams, unless the Board is able to be convened on short notice. Decisions of all cases involving senior students shall be rendered prior to the Commencement exercises of the academic year in which the appeal is made.

e. Upon determination of the date, time and place of the hearing, the Secretary of the Appellate Board shall inform the Board of the date, time and place of the hearing and shall instruct them to read the materials pertaining to the case in the Office of the Dean of Students prior to the hearing.

f. After reviewing the materials pertaining to the case, members of the Appellate Board may request that an individual or group be available to testify at the hearing in order to clarify any point contained in the written records or the statement of appeal.

### 2. Hearing

a. The Hearing shall be held on the Wheaton College campus, but shall be closed to the Wheaton College community except to members of the Appellate Board and any persons asked by the Appellate Board to appear at the hearing.

b. The Appellate Board shall formulate its decisions based upon the official hearing records of the College Hearing Board and the appellant's written statement.

c. If any individual or group has been asked to appear at the hearing, the Chair of the Appellate Board reserves the right to decide at what point during the hearing the individual or group shall appear to make a statement or answer questions from the Board.

d. An individual or group shall be expected to answer all relevant questions. If any person chooses to remain silent, members of the Appellate Board may interpret that silence as they see fit.

e. All will be reminded by the Chair of the Appellate Board that everything stated is confidential. Any violation of confidentiality shall be subject to review by the College Hearing Board.

f. In cases heard by the full Board, all members of the Appellate Board shall be entitled to one vote. A simple majority vote of the voting members shall be necessary for deciding a case. A member of the Board shall exempt herself/himself from any deliberation and voting in cases when a conflict of interest arises while serving on the Appellate Board.

### 3. Decision-Making

After reviewing an appeal, the Appellate Board shall decide in private whether to deny or rule in favor of the appeal.

a. If the appeal is denied, the original decision by the College Hearing Board shall take effect.

b. If the appeal is ruled in favor of, the Appellate Board shall refer the case back to the College Hearing Board with a written expression of the Appellate Board's opinion instructing the College Hearing Board to reconsider a case based on procedural error. In rehearing the case, the College Hearing Board must consider the statement from the Appellate Board and may reconsider all evidence and testimony from the initial hearing and any new evidence or supporting material deemed necessary. The Appellate Board may recommend to the College Hearing Board reconsideration of a sanction imposed in the case.

### 4. Post Hearing

The following procedures shall be followed after the reviewing of an appeal to insure fair treatment and confidentiality.

a. Once a decision has been reached, the appellant shall be informed of the findings of the Appellate Board.

b. The decision shall normally be mailed to the appellant within five (5) academic days of the finding of the decision and shall be sent by the Secretary of the Appellate Board.

c. The Secretary of the Appellate Board shall submit to the office of the President of the College the minutes of the Appellate and College Hearing Boards for review by the President. These shall be submitted within five (5) academic days after the Appellate Board hearing. Upon review by the President of the College, the minutes of both hearings shall be returned to the Office of the Dean of Students.

d. A copy of the reports and the decision shall be kept on file in the Office of the Dean of Students for five years. After a five-year period the file shall be placed into the Archives and sealed for a period of fifty (50) years. After fifty years, access to the file may be obtained only by consent of the Student Government Executive Board.

e. The Secretary of the Appellate Board shall submit to the Chair of the College Hearing Board a copy of the letter sent to the appellant regarding the findings of the Appellate Board. The Chair of the College Hearing Board shall report on the final disposition of the case to the College Hearing Board.

This page is maintained by Janith Hancock. Last updated on 1/19/04. Questions about this page? Use our query form.