UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TIMOTHY CLARKIN,

                Plaintiff,

v.

WHEATON COLLEGE and
PROFESSOR TIMOTHY BARKER,

                Defendants.

Civil Action No. 05-11376 NMG

**DEFENDANTS' OPPOSITION TO VERIFIED MOTION BY PLAINTIFF
TO VACATE THE ORDER DISMISSING THIS CASE AND RESTORE
THIS CASE TO THE TRIAL LIST**

WHEATON COLLEGE
and TIMOTHY BARKER,

By their attorneys,

HOLLAND & KNIGHT LLP

*/s/ Maura J. Gerhart*
Miriam J. McKendall, P.C. (BBO# 548825)
Maura J. Gerhart (BBO# 654695)
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: November 16, 2006

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................1

III.  ARGUMENT ........................................................................................................................5

    A.   MOTIONS INVOKING RELIEF UNDER FED. R. CIV. P. 60(B) SHOULD BE
    GRANTED ONLY UNDER EXCEPTIONAL CIRCUMSTANCES. .......................................5

    B.   PLAINTIFF'S VAGUE AND UNSUBSTANTIATED ASSERTIONS ABOUT
    HIS COUNSEL'S PERSONAL DIFFICULTIES DO NOT ENTITLE PLAINTIFF TO
    RELIEF FROM THIS COURT'S JUDGMENT UNDER EITHER FED. R. CIV. P.
    60(B)(1) OR 60(B)(6). ...............................................................................................................6

    C.   PLAINTIFF HAS NOT MET HIS BURDEN OF DEMONSTRATING
    EXCUSABLE NEGLECT UNDER FED. R. CIV. P. 60(B)(1)..................................................9

    D.   PLAINTIFF HAS NOT MET HIS BURDEN OF DEMONSTRATING THAT
    THE CONDUCT OF COUNSEL CONSTITUTES EXTRAORDINARY
    CIRCUMSTANCES UNDER FED. R. CIV. P. 60(B)(6).........................................................10

    E.   PLAINTIFF HAS NOT MET HIS BURDEN OF ESTABLISHING THAT HE,
    HIMSELF, PURSUED HIS CASE DILIGENTLY, OR THAT HIS DELAY IN
    BRINGING THIS MOTION DID NOT PREJUDICE DEFENDANTS. .................................12

    F.   PLAINTIFF HAS NOT MET HIS BURDEN OF DEMONSTRATING HE HAS
    MERITORIOUS CLAIMS, WHICH, IF PROVEN, WILL LIKELY BRING
    SUCCESS. ...................................................................................................................................15

IV.   CONCLUSION....................................................................................................................20

## I.    INTRODUCTION

The defendants, Wheaton College (the "College") and Professor Timothy Barker ("Professor Barker"), (collectively, "Defendants"), hereby oppose the Verified Motion by Plaintiff to Vacate the Order Dismissing This Case and Restore This Case to the Trial List (the "Motion to Vacate"). In the Motion to Vacate, Plaintiff Timothy Clarkin ("Plaintiff") suggests that his failure to prosecute this case should be excused because Plaintiff's counsel, Diane Caggiano, had several issues in her personal life which Plaintiff now tries to claim amount to "extraordinary circumstances" under Fed. R. Civ. P. 60(b)(6), necessitating relief from the judgment of dismissal entered by this Court on or about May 8, 2006. Plaintiff's argument is without merit. The circumstances complained of by Plaintiff are neither excusable nor extraordinary within the meaning of Fed. R. Civ. P. 60(b), as discussed herein, and the Motion to Vacate must therefore be denied.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who graduated from Wheaton College in May of 2005, filed the Complaint in this action in Bristol County Superior Court on or about May 31, 2005 against the College and Professor Barker, Plaintiff's professor in the Astronomy 140 class. The Complaint focuses on allegations regarding the College's student disciplinary process and the College's determination that Plaintiff violated the College Honor Code in December of 2002, in regard to a test he took in the Astronomy 140 class.

Defendants removed the action from Bristol County Superior Court to this Court on or about June 29, 2005. Defendants filed their Answer on or about July 7, 2005. This Court issued a Notice of Scheduling Conference dated November 14, 2005. Pursuant to this Notice, the Federal Rules of Civil Procedure and this Court's Local Rules, the parties were required to confer and file a joint statement prior to the Scheduling Conference, counsel for each party were required to confer with their respective clients and file a certificate of consultation, and Plaintiff was required to give a

written settlement proposal to Defendants. The Court set December 21, 2005 as the date for the Scheduling Conference.

On December 6, 2005, Defendants' counsel conferred with Plaintiff's counsel by phone regarding the issues to be discussed for preparation of the joint statement. Defendants' counsel agreed to prepare and send to Plaintiff's counsel a draft of a joint statement for her review.

On December 8, 2005, Defendants' counsel sent to Plaintiff's counsel, via facsimile and first class mail, a letter with a draft of the joint statement attached for her review. *See Letter dated December 8, 2005*, attached hereto as Exhibit 1. Plaintiff's counsel did not respond to Defendants' counsel. Defendants' counsel followed up by way of facsimile, voicemail, and electronic mail messages to Plaintiff's counsel, asking her to respond to the draft of the joint statement. *See Electronic Mail Messages dated December 15 and 19, 2005*, attached hereto as Exhibits 2 and 3. Plaintiff's counsel never responded to Defendants' counsel regarding the draft joint statement, despite Defendants' counsel's repeated attempts to confer about the content of that draft in order to finalize and file it prior to the December 21, 2005 Scheduling Conference.

On December 20, 2005, after receiving no response from Plaintiff's counsel, Defendants' counsel filed a Statement of Counsel with the Court on behalf of the Defendants regarding the issues to be discussed at the Scheduling Conference. Plaintiff did not file any statement with the Court regarding the issues to be discussed at the Scheduling Conference, as required under Local Rule 16.1(D). Plaintiff did not present a written settlement proposal to Defendants, as required under Local Rule 16.1(C). Plaintiff's counsel did not file a certificate of consultation certifying that she had conferred with her client, as required under Local Rule 16.1(D)(3).

The Scheduling Conference was held on December 21, 2005. Defendants' counsel attended the Scheduling Conference. Neither Plaintiff nor Plaintiff's counsel attended the Scheduling

Conference. Per this Court's request, Defendants' counsel sent Plaintiff's counsel a letter informing Plaintiff's counsel that the Scheduling Conference had been held in her absence and that the Court requested that Plaintiff's counsel inform the Court of the reason for her failure to attend the Scheduling Conference. *See Letter dated December 22, 2005*, attached hereto as <u>Exhibit 4</u>. Defendants' counsel sent that letter to Plaintiff's counsel via facsimile, certified mail, and electronic mail on December 22, 2005. Also, on December 22, 2005, Defendants' counsel spoke with Plaintiff's counsel by phone, informed her of the Court's request, and told her to expect that letter. Plaintiff's counsel signed for the certified letter on December 24, 2005. To Defendants' counsel's knowledge, Plaintiff's counsel never submitted to the Court an explanation for her absence.

After the Scheduling Conference, the Court entered a Scheduling Order which required the parties to serve their respective initial disclosures by January 6, 2006. On January 6, 2006, pursuant to that Scheduling Order, Defendants served the initial disclosures required by Fed. R. Civ. P. 26(a) on Plaintiff's counsel via facsimile, certified mail, and electronic mail. Plaintiff did not comply with this January 6, 2006 deadline.

Defendants also served Defendant Wheaton College's First Set of Interrogatories to Plaintiff Timothy Clarkin, Defendant Wheaton College's First Request for Production of Documents to Plaintiff Timothy Clarkin, and the Notice of Taking Deposition of Plaintiff Timothy Clarkin on Plaintiff's counsel, on January 13, 2006. (Defendants never received any response from Plaintiff to the interrogatories, document requests or notice of deposition.)

Because Plaintiff's actions had demonstrated a lack of intention to pursue the lawsuit, Defendants' counsel contacted Plaintiff's counsel, on January 19, 2006, by voicemail and email,

regarding Defendants' intention to file a Motion to Dismiss for Failure to Prosecute (the "Motion to Dismiss").[1]

After receiving no response to the voicemail and an email sent to Plaintiff's counsel, Defendants' counsel filed its Motion to Dismiss on January 20, 2006.

Three (3) days after the Motion to Dismiss was served on her by mail, Plaintiff's counsel emailed the initial disclosures that Plaintiff had failed to serve previously to Defendants' counsel on January 23, 2006. In that email, Plaintiff's counsel apologized to Defendants' counsel "for the lengthy delay," stating that she had been "called out of town." *See Electronic Mail Message, dated January 23, 2006*, attached hereto as Exhibit 5.

On February 9, 2006, Defendants' counsel received an email from Attorney Lindsey Straus. *See Electronic Mail Message, dated February 9, 2006*, attached hereto as Exhibit 6. Attorney Straus stated in her email that Plaintiff's counsel had asked Attorney Straus to be her co-counsel in the case, and that Attorney Straus would be entering an appearance that day. Attorney Straus' email stated that Plaintiff's counsel "has gone to Florida to be with her father, who is dying." *See* Exhibit 6. Attorney Straus never entered an appearance in the case, nor did she, or Plaintiff's counsel, file any opposition to the Motion to Dismiss.

Three more months passed. Plaintiff did not file any Opposition to Defendants' Motion to Dismiss nor did he or his counsel contact Defendants' counsel or, upon information and belief, this Court. On May 8, 2006, this Court entered an Order granting Defendants' Motion to Dismiss and dismissed the case. Six more months passed, with no word from Plaintiff. Then, on November 2,

---

[1] As set forth in detail in the Defendants' Motion to Dismiss (allowed by this Court on May 8, 2006), Plaintiff's actions of failing to attend the Scheduling Conference, failing to file with the Court any statement regarding the issues to be discussed at the Scheduling Conference (as required under Local Rule 16.1(D)), failing to present a written settlement proposal to Defendants (as required under Local Rule 16.1(C)), failing to file a certificate of consultation certifying that Plaintiff's counsel had conferred with her client (as required under Local Rule 16.1(D)(3)), and failing to timely serve initial disclosures, as required by Fed. R. Civ. P. 26(a)(1), provided ample grounds to justify dismissal of the action.

2006, Plaintiff served the current Motion to Vacate on Defendants' counsel, and seeks relief under Fed. R. Civ. P. 60(b).

## III.    ARGUMENT

### A.    Motions Invoking Relief Under Fed. R. Civ. P. 60(b) Should Be Granted Only Under Exceptional Circumstances.

The First Circuit views Fed. R. Civ. P. 60(b) as a "vehicle for 'extraordinary relief'" and consequently has held that "motions invoking this rule should be granted 'only under exceptional circumstances.'" *Davila-Alvarez v. Escuela de Medicina Universidad*, 257 F.3d 58, 64 (1st Cir. 2001).

Rule 60(b) enumerates six specific grounds under which a party may request this extraordinary relief from judgment. Only two of those six grounds are relevant for the purpose of opposing the Motion to Vacate. They are Rule 60(b)(1) and Rule 60(b)(6). Rule 60(b)(1) provides that a court may relieve a party from judgment on the basis of "mistake, inadvertence, surprise or excusable neglect." Rule 60(b)(6) provides that a court may relieve a party from judgment on the basis of "any other reason justifying relief from the operation of the judgment." It is "evident from the words of the Rule that (b)(6) applies only to grounds for relief not covered in the first five subdivisions of the rule." *United States v. Parcel of Land with Bldg. Appurtenances, Known as Woburn City Athletic Club, Inc.*, 928 F.2d 1, 5 (1st Cir. 1991).

Rule 60(b)(6) is relevant to this opposition only because Plaintiff attempts (incorrectly) to base this Motion to Vacate under that provision. Rule 60(b)(1) is relevant to this opposition because it is the provision under which Plaintiff's Motion to Vacate is properly analyzed. That is, in his Motion to Vacate, Plaintiff requests relief under Rule 60(b) on the grounds that certain issues in the personal life of his counsel, Attorney Caggiano, caused her to be "unable to represent [him] in any effective capacity." *See* Motion to Vacate, p. 7. Because such grounds are properly

characterized as neglect, Plaintiff's Motion to Vacate should be deemed to have been brought under Rule 60(b)(1), and not Rule 60(b)(6). *See Parcel of Land*, 928 F.2d at 5; *see also Klapprott v. United States*, 335 U.S. 601, 613 (1949) (recognizing that relief is not available to a litigant under Rule 60(b)(6) if the conduct at issue is properly characterized as "neglect" within the meaning of Rule 60(b)(1)); *Ojeda-Toro v. Rivera-Mendez*, 853 F.2d 25, 30-31 (1st Cir. 1988) (a claim related to attorney conduct can be asserted under Rule 60(b)(6) only if relief is unavailable under subsections (1)-(5)).

Correct application of any provision of Rule 60(b) to the facts of this situation, however, does not result in Plaintiff obtaining relief from the judgment entered in this case over six months ago. As discussed herein, Plaintiff has not met his stringent burdens of demonstrating that he himself diligently pursued this case and kept in contact with his counsel, that he has not prejudiced Defendants by the delay in bringing this Motion, and that he has brought claims that are meritorious, as required to demonstrate excusable neglect under Rule 60(b)(1) and extraordinary circumstances justifying relief under Rule 60(b)(6).

**B.    Plaintiff's Vague and Unsubstantiated Assertions About His Counsel's Personal Difficulties Do Not Entitle Plaintiff to Relief from this Court's Judgment Under Either Fed. R. Civ. P. 60(b)(1) or 60(b)(6).**

The First Circuit has made it clear that a Rule 60(b) motion comprised of vague and unsubstantiated assertions is deficient. *See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 19 (1st Cir. 1992). The Court has held that it need not give credence to a moving party's "bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade." *Id.* at 18. The First Circuit also has instructed courts that in determining the viability of a Rule 60(b) motion, the absence of asserted facts is as important as those assertions actually presented. *See id.* at 19.

The *Teamster* case provides a model of the type of Rule 60(b) motion which should not be allowed and, ironically, that model parallels the very Motion to Vacate (and deficiencies therein) now before this Court.

In his Motion to Vacate, Plaintiff offers, as an excuse for the decisions both he and his counsel made regarding their prosecution of this case, vague references to personal circumstances encountered by his counsel, which occurred during unspecified time periods. Plaintiff offers unsubstantiated overgeneralizations about his belief as to how those personal situations impacted decisions made about this case, while being silent on how such personal issues actually impacted all aspects of Plaintiff's counsel's daily professional and personal obligations and functioning (and not just Plaintiff's case).

The specifics details which Plaintiff offers in support of the Motion to Vacate are few, and cry out for further candor and clarification. For example, Plaintiff states that his "counsel [Attorney Caggiano] unexpectedly lost her partner and her father was **recently** diagnosed with Alzheimer's and has been place in an assisted living facility . . . [t]his has necessitated Plaintiff's counsel taking her mother into her home and caring for her." Motion to Vacate, p. 5. *(Emphasis supplied.)* Yet, Plaintiff does not provide a specific time period during which those events occurred, nor does he specify how (or when) those events related to decisions made by him and his counsel in regard to pursing this lawsuit. Similarly, Plaintiff notes that his counsel suffers from depression, and states that her "doctor has recommended she take a medical leave of absence . . . [t]herefore, Plaintiff's counsel, realizing she is, **at the present time**, unable to competently represent the Plaintiff, has found legal counsel to undertake representation of Plaintiff in the event the Court grants the within Motion." Motion to Vacate, p. 5. *(Emphasis supplied.)* While Plaintiff is refreshingly candid about this timeframe (that is, that a physician now, "at the present time," is

recommending counsel's medical leave), such does not address circumstances occurring prior to "the present time" and is wholly insufficient to justify the extreme relief sought by Plaintiff.

While the Motion to Vacate is devoid of specific dates and information necessary to answer the pivotal questions of when and how the personal situations prevented Plaintiff's counsel from representing him in this case (prior to "the present time"), the record in this case contains information which addresses those questions. It is clear based on the facts, as clarified in this opposition, that Plaintiff cannot claim that his counsel's personal situation prevented her from representing Plaintiff from the time he filed this case in May of 2005 through the time the Motion to Dismiss was served and filed in January, 2005, and up to "the present time." Indeed, Plaintiff's counsel's actions support that she was able to represent Plaintiff when she so desired, and that her alleged inability to represent Plaintiff during the relevant time period is not supported by the facts. For example, Plaintiff's counsel was able to converse with Defendants' counsel, on December 22, 2005, the day after she failed to appear for the Scheduling Conference, and to sign for the certified letter from Defendants' counsel on December 24, 2005. Plaintiff's counsel was able to contact Defendants' counsel after she was served with the Motion to Dismiss, on January 23, 2006, and did so promptly. As explained in the factual recitation above, within three (3) days of Defendants' counsel mailing to Plaintiff's counsel a copy of Defendants' Motion to Dismiss, Plaintiff's counsel responded by emailing to Defendants' counsel the initial disclosures that she had failed to send previously, with an apology for the "lengthy delay" because she had been "called out of town." *See* Exhibit 5. In addition, during the same time period immediately following Plaintiff's counsel's failure to attend the scheduling conference or to follow this Court's rules, Plaintiff's counsel had the capacity to contact another attorney, Attorney Straus, to act as her co-counsel in the case and to have Attorney Straus contact Defendants' counsel.

Just as Plaintiff was able to contact Defendants' counsel on December 22, 2005, she could have just as easily chosen to contact the Court. Just as Plaintiff's counsel was able to contact Defendants' counsel and serve Plaintiff's (overdue) initial disclosures on January 23, 2006, she could have responded to the Motion to Dismiss. Just as Plaintiff's counsel was able to seek assistance from Attorney Straus in February of 2006, she could have requested an extension of time to respond to the Motion to Dismiss, or followed up in some way to alert the Court to her (alleged) situation. She did not, and by doing so she affirmatively chose not to.

While Plaintiff, now in hindsight, may wish he and his counsel made different choices as to how they pursued this lawsuit, he cannot claim that his counsel did not provide him with representation.

The lack of specificity in the Motion to Vacate, combined with the reality that Plaintiff and his counsel made a series of decisions as to how to pursue this lawsuit, render the motion deficient, and for that reason it should be denied. Even if the overwhelmingly vague and indeterminate nature of the assertions could be overlooked, the Motion to Vacate should be dismissed because Plaintiff has not met his remaining burdens of proof under Rule 60(b), as discussed below.

## C.    Plaintiff Has Not Met His Burden of Demonstrating Excusable Neglect Under Fed. R. Civ. P. 60(b)(1).

The personal circumstances in an attorney's life do not constitute "excusable neglect" under Rule 60(b)(1). With respect to the standard for "excusable neglect" under Rule 60(b)(1), the First Circuit has explicitly recognized that "a lawyer's duty of diligence transcends both upheaval at work and personal tragedy." *See Davila-Alvarez*, 257 F.3d at 65 (recognizing that the death of the brother of plaintiff's counsel did not absolve counsel of responsibility for diligently pursuing the action); *see also Miranda v. American Airlines*, 176 F.R.D. 438 (D.P.R. 1998) (finding that "unfortunate circumstances," such as a car accident and the death of multiple family members, in

the lives of the counsel for plaintiff did not constitute grounds for "excusable neglect" within the meaning of Rule 60(b)(1) sufficient to justify vacation of dismissal for failure to prosecute).

The personal circumstances of Plaintiff's counsel's life, as alleged by Plaintiff in the Motion to Vacate, are no different than those in the above-cited cases for the purposes of this Rule 60(b)(1) analysis. Moreover, in the instant case, the record is clear that Plaintiff's counsel engaged in active representation of Plaintiff, and made decisions regarding how to pursue this lawsuit. In some instances, she decided to respond to Defendants' counsel and this Court, and in other instances she decided not to do so. Whether the reasons for her decisions were the result of deliberate strategy, a reflection of her own view of the merits of the case, inexperience with federal court procedures or unfortunate personal circumstances, none of those reasons constitute "excusable neglect" justifying relief under Rule 60(b)(1) from the judgment entered by this Court six months ago.

**D.    Plaintiff Has Not Met His Burden of Demonstrating that the Conduct of Counsel Constitutes Extraordinary Circumstances Under Fed. R. Civ. P. 60(b)(6).**

Although Plaintiff desires to characterize his counsel's personal circumstances as "extraordinary circumstances" to avoid the clear and narrow application of Rule 60(b)(1), Plaintiff has offered no factual assertion which rises to this stringent level of "extraordinary circumstances," nor any case law which remotely compels a finding that the assertions presented in the Motion to Vacate meet the high standard of Rule 60(b)(6).[2] This is not surprising because, where the First Circuit recognized that personal life circumstances of counsel do not justify "excusable neglect" within the meaning of Rule 60(b)(1), it is difficult to fathom how such circumstances could possibly be found to constitute "extraordinary circumstances" justifying relief from a judgment within the

---

[2] In the Motion to Vacate, Plaintiff relies heavily on the *Klapprott* case for relief, ignoring the utter lack of commonality between the facts of that case and the instant case. Plaintiff also relies on *Teamsters*, which supports Defendants' (not Plaintiff's) position, as described herein.

meaning of Rule 60(b)(6). *See Klapprott*, 335 U.S. at 613 (recognizing that Rule 60(b)(6) requires more than the "mere neglect" contemplated by Rule 60(b)(1)).

The Courts have recognized "extraordinary circumstances" within the meaning of Rule 60(b)(6) only in very limited cases when the rights of the litigants have been prejudiced through no fault of their own. *See Klapprott*, 335 U.S. at 615 (recognizing "extraordinary circumstances" within the meaning of Rule 60(b)(6) where "[t]he undenied allegations already set out show that [plaintiff] was stripped of his citizenship by his Government, without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity from him effectively to defend his citizenship"); *Pacific Far East Lines, Inc.*, 889 F.2d 242, 250 (9th Cir. 1989) (recognizing "extraordinary circumstances" within meaning of Rule 60(b)(6) where legislation was passed subsequent to the initial resolution of the case which changed substantive rights of plaintiff, thereby "excus[ing] their failure to follow ordinary paths of appeal").

The circumstances under which Rule 60(b)(6) may be applied in the context of attorney conduct are rare and require a demonstration both that the actions of the attorney constituted inexcusable, gross neglect and that the plaintiff was not aware of such actions. *See Parcel of Land*, 928 F.2d at 6 (refusing to grant relief under Rule 60(b)(6) to a plaintiff whose counsel failed to conduct discovery or to oppose the motion for summary judgment filed by defendant); (internal citations and quotations omitted); *Chang v. Smith*, 778 F.2d 83, 85 (1st Cir. 1985) (recognizing that relief under Rule 60(b)(6) is "granted only in extraordinary circumstances," and that the conduct of counsel must be "gross and inexcusable," and refusing to grant plaintiff relief).

The assertions in the Motion to Vacate do not demonstrate that Plaintiff's counsel engaged in inexcusable, gross neglect which would entitle Plaintiff to relief under Rule 60(b)(6). The

selective and deliberate decisions made by Plaintiff's counsel in the course of providing representation of Plaintiff negate any finding of inexcusable, gross neglect. For this reason alone, relief under Rule 60(b)(6) is not warranted in any way.

**E.    Plaintiff Has Not Met His Burden of Establishing That He, Himself, Pursued His Case Diligently, or that His Delay in Bringing This Motion Did Not Prejudice Defendants.**

Plaintiff cannot use Rule 60(b) to cast all blame on his counsel, and at the same time shield himself from his independent obligation to pursue this case diligently. Quite simply, a plaintiff owns responsibility for selecting his attorney and must bear the consequences of the actions of the counsel he selected. Because Plaintiff himself bears responsibility for the diligent pursuit of his case, he cannot be relieved from judgment under Rule 60(b) simply because of the alleged actions of his counsel. *See Parcel of Land*, 928 F.2d at 6.

As the First Circuit recognized in *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 16 (1st Cir. 1983) (internal citations and quotations omitted):

> "The argument that the sins of the attorney should not be visited on the client is a seductive one, but its siren call is overborne by the nature of the adversary system.
>
> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."

The same rationale applies here. Plaintiff chose his own attorney to represent him in this action. Plaintiff is expected to make reasonable inquiry about the status of the case and ensure that his interests are being represented properly. When seeking relief under Rule 60(b)(1) or (6), Plaintiff must address his own role in the failure to diligently prosecute this action. At a minimum, Plaintiff must set forth specific facts in his Motion which prove that his counsel engaged in conduct

of which he was unaware until the time of the filing of the Motion. *See Teamsters*, 953 F.2d at 19

(stating that the plaintiffs' Rule 60(b) "motion papers were equally revealing for what they did not

say" about the knowledge of plaintiffs regarding the progress of the case); *Pagan v. American

Airlines*, 534 F.2d 990, 993 (1st Cir. 1976) (rejecting motion under Rule 60(b) where "[a]ny loss of

rights stem[med] solely from the cumulative effect of appellant's own neglect and that of his newly

retained attorney"). Plaintiff has failed to do so.

Plaintiff has made no effort to explain his own actions in allowing this case to stagnate for

eighteen months from the time of the filing of the Complaint to the present. Plaintiff has provided

neither this Court nor Defendants' counsel with any explanation as to when he had knowledge of

his counsel's personal difficulties and questioned his counsel's conduct. Plaintiff made no effort to

inform this Court of when he learned of the Motion to Dismiss, when he learned of this Court's

May 8, 2006 Order dismissing this case, and whether he was aware of his counsel's request that

Attorney Straus act as co-counsel in January, 2006 after the Motion to Dismiss had been filed.

Plaintiff has not informed this Court about the role he had in securing new counsel who now seek to

make an appearance in this case, and the timing of such. Therefore, even if, *arguendo,* Plaintiff

could establish that Rule 60(b) somehow encompasses his counsel's personal circumstances,

Plaintiff has not met his additional burden of establishing that he had no actual knowledge of his

counsel's actions, and that his failure to take any action until the present Motion is justifiable. *See

Ojeda-Toro*, 853 F.2d at 30 (denying relief where plaintiff "was aware of her counsel's

delinquency"); *Chang v. Smith*, 772 F.2d at 85 (refusing to relieve plaintiff from judgment based on

neglect by counsel where decision not to act by counsel was undertaken with plaintiff's knowledge).

Plaintiff should not be forgiven for this grave omission. Allowing Plaintiff to be excused for

his own failures would allow litigants to sit back and blame every failure on counsel, without

placing any personal responsibility on the litigant, which would "be wholly inconsistent with our system of representative litigation . . ." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962). It is undisputed that Rule 60(b) does not permit such leniency. *See Davila-Alvarez*, 257 F.3d at 64, 67 (denying relief under Rule 60(b) from judgment dismissing claims for failure to prosecute where neither parties nor their attorneys were diligent in pursuing case).

Further, in order to succeed in vacating a judgment under Rule 60(b), Plaintiff must establish that neither Defendants nor this Court will be prejudiced by re-opening this case. Plaintiff's conclusory statement in the Motion to Vacate regarding the presumed lack of prejudice to Defendants ignores the reality of the history of the case. Plaintiff is seeking to revive claims which are based on alleged facts occurring four years ago, when Plaintiff was a sophomore at the College in 2002. Plaintiff waited until approximately one week after his graduation from the College in May 2005 to file this lawsuit. At that point, the College was already at a disadvantage due to the lengthy passage of time and frequency with which individuals in a college environment re-locate.[3] Defendants also were prejudiced by Plaintiff's lack of responsiveness, as Defendants' counsel had to make repeated attempts to contact Plaintiff's counsel, who chose to respond only selectively, in an effort to comply with the rules of this Court. In addition, both the Court and Defendants' counsel invested time into the Motion to Dismiss, which Plaintiff chose to not oppose. Finally, in deciding a Rule 60(b) motion, the Courts have looked to "the importance of finality as applied to court judgments." *See Teamsters*, 953 F.2d at 19. Here, both the Court and Defendants would be prejudiced by a re-opening of this action, particularly given that Plaintiff has failed to present any

---

[3] The delay is not simply a matter of months. It is a cumulative delay of approximately four years, considering the time frame of the alleged acts, and the facts that the action was filed over two and one-half years after the December 2002 incident and the "docket age" of the case will be over one and one-half years old if the relief were to be granted.

justifiable reason as to why he failed to diligently pursue this action (as discussed above) and also has no meritorious claims (as discussed below).

### F.    Plaintiff Has Not Met His Burden of Demonstrating He Has Meritorious Claims, Which, if Proven, Will Likely Bring Success.

A party seeking relief under Rule 60(b) must establish that he has a meritorious claim, which, if proven, will bring success in its wake. *Teamsters*, 953 F.2d at 21. The mere allegation of a meritorious claim is not sufficient, however. As the First Circuit has clearly articulated, "[e]ven an allegation that a meritorious claim exists, if the allegation is purely conclusory, will not suffice to satisfy the precondition to Rule 60(b) relief." *Id.* Rather, the moving party must do more, such as make a proffer of evidence which would permit a finding for him on the merits, or set forth specific facts sufficient to raise the prospect of overcoming identified defenses. *See id.*

Here, Plaintiff has not addressed the requirement that he demonstrate a meritorious claim with specificity. Rather, Plaintiff states only, in a swift and broad stroke, that he has "alleged a meritorious claim, to wit, discrimination based upon disability." *See* Motion to Vacate, p. 7. Then, apparently forgetting that he did not serve discovery or respond to any of the discovery served on him by Defendants back in January of 2006, Plaintiff audaciously represents to this Court that "the pleadings and **discovery** thus far provide evidence to support his claims." *See* Motion to Vacate, p.7. (Emphasis supplied). Why Plaintiff takes such a dismissive approach to establishing this essential component of a Rule 60(b) motion is curious. Whatever Plaintiff's motivation, the result is clear. Because Plaintiff's Motion to Vacate, like the Rule 60(b) motion presented in the *Teamsters* case, contains only a conclusory allegation as to the merits of his claims, it fails to satisfy this core requirement of Rule 60(b) and must be dismissed.

Even if Plaintiff had attempted to address the merits of his claims in any meaningful way, he would be unable to proffer sufficient evidence to carry his burden of demonstrating meritorious

claims at this Rule 60(b) juncture.[4]  That is, in the Complaint, Plaintiff alleges claims for breach of

contract, tortious interference with advantageous relations, invasion of privacy, and violations of the

statutes prohibiting disability discrimination.[5]

Although packaged in the form of contract, tort and statutory claims, central to Plaintiff's

claims is Defendants' application of its own internal student honor code and student disciplinary

process as to academic matters in a private college. Specifically, Plaintiff's claims revolve around

his disagreement with the determination made through the College's student disciplinary process

that he cheated on an Astronomy test given by Professor Barker in December of 2002. *See*

Complaint, ¶ 27 and Exhibit I, attached thereto.  The determination that Plaintiff was found to be

responsible for cheating on his test was made by the members of the disciplinary committee known

as the College Hearing Board (not by Professor Barker).  The College Hearing Board heard

Professor Barker's position and Plaintiff's position, reviewed documents, and came to its collective

determination that Plaintiff had cheated. *See* Complaint, ¶ 22-27 and Exhibits E through J, attached

thereto.  (The members of the College Hearing Board included the Associate Dean of Students, a

student who serves as chair, and other students and faculty members. *See* Complaint, ¶ 22.)

Because all of Plaintiff's claims revolve around this student discipline process and its

outcome, he cannot demonstrate the claims are meritorious at this Rule 60(b) stage. This is because

Plaintiff cannot now, or ever, overcome the well-established legal principles and caselaw

confirming that courts are "chary about interfering with academic and disciplinary decisions made

by private colleges." *Schaer v. Brandeis*, 432 Mass. 474, 478-482 (2000); *see also Coveney v.*

---

[4] It should be noted that Plaintiff's burden is more than mere "notice pleading," as he is asking this Court to devote
judicial resources to revive claims that already have been dismissed.  The First Circuit has recognized that this "showing
requires more than an unsubstantiated boast," and that "a litigant, as a precondition to relief under Rule 60(b), must give
the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters*, 953 F.2d at 20-21.

[5] While the Motion to Vacate makes a fleeting reference to the disability claims only (at page 7), it fails to acknowledge
even the existence of the other claims.  This is of little surprise because those claims are not meritorious either.

*President and Trustees of the College of the Holy Cross*, 388 Mass. 16, 20 (1983) (college must have broad discretion in determining appropriate sanctions for violations of its policies). Repeatedly, courts have refused to second-guess the academic and disciplinary decisions made by private schools and have dismissed claims alleged by disciplined students which are grounded in the notion that generalized representations in a handbook or about a student disciplinary procedure can form the basis of a contract. *See Schaer v. Brandeis*, 432 Mass. 474, 478-482 (2000) (dismissing, on a Rule 12(b)(6) motion, plaintiff's breach of contract claim alleging that he was "unfairly disciplined" by university board on student conduct); *see also Driscoll v. The Board of Trustees of Milton Academy and Robertson,* Civil Docket No. 06-00157 (Mass. Super. 2006) (dismissing, on a Rule 12(b)(6) motion, Plaintiff's breach of contract claim against school because the "promises" alleged by Plaintiff were "far too general and indefinite to form the basis of a contract cause of action" ) (unpublished opinion, attached hereto as Exhibit 7); *Lubin v. The Board of Trustees of Milton Academy*, Civil Docket No. 2004-00422 (Mass. Super. 2005) (dismissing, on summary judgment, breach of contract claim holding that the alleged promises in written materials were merely general representations and thus insufficient to form an enforceable contract between student/parents and the school) (unpublished opinion, attached hereto as Exhibit 8); *Cho Hyun Shin, et al. v. Massachusetts Institute of Technology, et al.*, 19 Mass. Law Rptr. No. 25, 570, 574 (Mass. Super. 2005) (dismissing, on summary judgment, breach of contract claim against university which was based on statements made in brochures, because these statements were merely "generalized representations" that were "too vague and indefinite to form an enforceable contract"); *Morris v. Brandeis Univ.*, 60 Mass. App. Ct. 1119 (Mass. App. Ct. 2004) (recognizing that "[g]reat deference is extended to university decision-making on academic and disciplinary matters" and dismissing

claim for breach of contract based on student disciplinary procedures at summary judgment) (unpublished opinion, attached hereto as Exhibit 9).

These principles and case law define the foundation upon which Plaintiff must be able to build and maintain all of his claims. Yet, the application of applicable law renders Plaintiff's contract claim, and all other claims, incapable of existing within this established foundation. As such, Plaintiff is unable to demonstrate he has any meritorious claims within the meaning of Rule 60(b).

Further review of Plaintiff's other claims on an individual basis yields the same conclusion. As noted above, Plaintiff's self-declaration that his disability claims are meritorious is not sufficient to meet his burden of establishing a meritorious claim for Rule 60(b). *See Teamsters*, 953 F.2d at 21. It is reasonable to conclude that Plaintiff provided no basis for his self-declaration because discussion of his disability claims turns logic on its head. Plaintiff states he was allowed special accommodations for test taking (including receiving extended time to take tests and being permitted to take tests in isolated locations and not in the classroom) due to his disability, for each semester he was at the College. *See* Complaint ¶¶ 6-7, and Exhibits A and B, attached thereto. Moreover, Plaintiff had taken many tests in the Astronomy course at issue in locations outside the classroom, with extended time, for the entire semester, prior to the December 2002 test at issue, without difficulty. Yet, because he was displeased with the determination made through the College's disciplinary process, Plaintiff is attempting to assert that the claim that he cheated was fabricated on the basis of disability. In the face of such illogic, the likely dismissal of the claims at or before the summary judgment stage, and the stringent requirement that the Rule 60(b) moving party do more than allege his claim is meritorious, Plaintiff apparently adopted "the less said, the better" philosophy with the Motion to Vacate. Such strategy, like the underlying disability claim, is futile.

Just as Plaintiff cannot demonstrate his contract and disability claims are meritorious, he cannot demonstrate his claims for interference with advantageous relations and privacy violations are meritorious. Liability for intentional interference with advantageous relations is only available against company officials when their actions are motivated by actual, and not merely implied, malice. *See Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 664 (1981). Mere negligence or even "sloppy and unfair business practices" are not sufficient to overcome the privilege. *See id.* at 665. A review of the Complaint (and the numerous exhibits attached thereto) and the Answer demonstrates that Plaintiff will not be able to adduce sufficient evidence that Professor Barker was motivated by any such malice when he raised his concern that Plaintiff cheated on his test. Similarly, Plaintiff has not attempted to assert how his claim for invasion of privacy could be meritorious in the face of the reality that Massachusetts courts apply that statute when one party has information "of a highly personal or intimate nature" about the other party and publicly discloses that information without a legitimate, countervailing interest for the disclosure. *See Bratt v. International Business Machine Corp.*, 392 Mass. 508, 517-18 (1984).[6]  This is another claim unlikely to survive past dismissal.

Finally, Plaintiff has neglected to present in his Motion to Vacate the fact that he has yet to state the damages he seeks. This is because, Defendants contend, Plaintiff has suffered no recoverable damages. Plaintiff was suspended for a semester due to his cumulative disciplinary record (and not solely because of the finding that he cheated on an exam), yet he received a full refund of the tuition for the semester, along with a pro-rated refund for his room/board for the

---

[6] Moreover, review of the Complaint shows that Plaintiff's invasion of privacy claim is premised on the allegation that a student (a non-party) who participated in the College Hearing Board process allegedly disclosed information about the hearing to another student in the dining hall. *See* Complaint, ¶ 55. The Complaint implies that Plaintiff did not actually hear the alleged disclosure, but only that Plaintiff saw that individual "pointing him out" to another student. *See* Complaint, ¶ 55. From this act of one student pointing in a large cafeteria, Plaintiff inferred the existence of a disclosure and the violation of a statute.

semester. *See* Complaint ¶ 30, and Exhibit J, attached thereto. The suspension did not result in him failing the Astronomy class as he received a passing grade. *See* Complaint ¶ 30, and Exhibit J, attached thereto. The suspension did not impact Plaintiff's graduation date; Plaintiff graduated at the same time (May of 2005) that he would have graduated had he not been suspended. *See* Complaint ¶ 31, and Exhibit K, attached thereto. Just as there are no meritorious claims, there are no damages.

## IV.    CONCLUSION

WHEREFORE, Defendants request that Plaintiff's Motion to Vacate be denied, and that Defendants be awarded their attorneys' fees and costs in opposing this Motion.

## REQUEST FOR HEARING

Defendants request a hearing on the Verified Motion by Plaintiff to Vacate the Order Dismissing This Case and Restore This Case to the Trial List.

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 16, 2006.

/s/ *Maura J. Gerhart* _____
Maura J. Gerhart, Esq.

**EXHIBIT 1**

# Holland+Knight

Tel  617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
www.hklaw.com

Miriam J. McKendall, P.C.
617 573 5846
mmckendall@hklaw.com

December 8, 2005

**BY FACSIMILE (508-775-4502) and**
**FIRST CLASS MAIL**

Diane P. Caggiano, Esquire
Law Offices of Diane P. Caggiano
P.O. Box 183
280 Winter Street
Hyannis, MA  02601

> Re:   **Timothy Clarkin v. Wheaton College and Professor Timothy Barker**
> **Civil Action No. 05-11376 NMG**

Dear Attorney Caggiano:

As we discussed on Tuesday, I am enclosing for your review the proposed "Joint Statement Submitted Pursuant to Fed.R. Civ.P.26(f) and Local Rule 16.1".

Please call me to let me know if it is acceptable in its current form, or if you have any suggested changes.

Very truly yours,

HOLLAND & KNIGHT LLP

Miriam J. McKendall, P.C.

MJM/afb

# 3435555_v1

**DRAFT 12-07-05**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| |
|---|
| TIMOTHY CLARKIN, |
| Plaintiff, |
| v. |
| WHEATON COLLEGE and PROFESSOR TIMOTHY BARKER, |
| Defendants. |

Civil Action No. 05-11376 NMG

## JOINT STATEMENT SUBMITTED PURSUANT TO
## FED. R. CIV. P. 26(f) AND LOCAL RULE 16.1

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 16.1 and this Court's Notice dated November 14, 2005, Plaintiff Timothy Clarkin and Defendants Wheaton College and Timothy Barker submit this joint statement and proposed pre-trial schedule.

**I.    Agenda for Scheduling Conference**

The parties propose that the agenda for the December 21, 2005 initial scheduling conference include discussion of the following:

    a.    settlement status; and

    b.    the parties' proposed joint discovery plan.

As required under Fed. R. Civ. P. 26(f) and Local Rule 16.1(B), counsel conferred on December 6, 2005 to establish the proposed agenda and pre-trial schedule.

**II.    Joint Discovery Plan**

**a.    Initial Disclosures**

The parties agree to complete the disclosure of relevant documents and information required by Fed. R. Civ. P. 26(a)(1) on or before January 6, 2006.

DRAFT 12-07-05

**b.     Fact Discovery Deadline**

The parties propose that all fact discovery, including depositions, be completed on or before August 1, 2006.

**c.     Written Discovery Deadline**

The parties propose that written discovery requests to a party be served at any time after the scheduling conference, provided that the party serving such requests has first made the initial disclosures required by Local Rule 26.2(A).

**d.     Depositions**

The parties propose that they may notice and take depositions at any time after the scheduling conference, provided that the party has first made initial disclosures required by Local Rule 26.2(A). The parties also propose that the parties be limited to a total of ten depositions per side in accordance with Local Rule 26.1(C).

**e.     Expert Disclosure and Discovery**

The parties propose that Plaintiff must designate expert witnesses, if any, and produce expert reports on or before August 1, 2006, Defendants must designate expert witnesses, if any, and produce expert reports on or before  September 1, 2006, and the depositions of expert witnesses must be completed on or before October 1, 2006.

**III.    <u>Filing of Motions</u>**

The parties propose that all amendments to pleadings and joinder of additional parties shall be filed on or before April 6, 2006.

The parties propose that any motions under Fed. R. Civ. P. 56 must be filed on or before November 6, 2006, and opposition papers to such motions shall be filed on or before December 6, 2006. Reply memoranda, if any, shall be filed on or before December 22, 2006.

**DRAFT 12-07-05**

IV.    **Proposed Conferences with Court and Final Pre-Trial Conference**

The parties agree to the scheduling of a final pre-trial conference within thirty (30) days of receipt of a decision of any pending dispositive motions, if dispositive motions are filed.  If no such dispositive motions are filed, the parties propose that the final pre-trial conference be scheduled in December, 2006.

V.     **Trial by Magistrate Judge**

The parties do not consent to trial by Magistrate Judge at this time.

VI.    **Compliance with Local Rule 16(D)(3)**

Plaintiff's Local Rule 16.1(D)(3) certification will be filed prior to the scheduling conference.

Defendants' Local Rule 16.1(D)(3) certification will be filed prior to the scheduling conference.


Respectfully submitted,

TIMOTHY CLARKIN                          WHEATON COLLEGE and TIMOTHY BARKER,

By his attorney,                         By their attorneys,

LAW OFFICES OF DIANE P. CAGGIANO         HOLLAND & KNIGHT LLP


_____           _____
Diane P. Caggiano (BBO# 644340)          Miriam J. McKendall, P.C.(BBO# 548825)
Law Offices of Diane P. Caggiano         Maura J. Gerhart (BBO# 654695)
5 Houghton Road                          Holland & Knight LLP
Hyannis, MA  02601                       10 St. James Avenue
(508) 362-0933                           Boston, MA  02116
                                         (617) 523-2700
Dated:  December __, 2005

# 3411794_v1

**EXHIBIT 2**

## McKendall, Miriam (BOS - X75846)

| | |
|---|---|
| **From:** | McKendall, Miriam (BOS - X75846) |
| **Sent:** | Thursday, December 15, 2005 1:13 PM |
| **To:** | 'dcaggiano@comcast.net' |
| **Subject:** | Confidential |

**Sensitivity:**    Private

Attorney Caggiano -

I have not yet heard back from you in response to the Proposed Joint Statement I sent to you on December 8, 2005 (nor in response to my follow-up inquiry to you faxed December 13, 2005).

Also, I have not yet received plaintiff's proposed settlement demand per the local federal rules.

Kindly get back to me today so the parties may satisfy their obligations under the local federal rules in a timely manner.

Thank you.

 - Miriam

# Holland ✦ Knight

**Miriam J. McKendall, P.C.**
Partner
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116

Main  617-523-2700
Direct 617-573-5846
Fax   617-523-6850
Email  mmckendall@hklaw.com

www.hklaw.com

**NOTICE:**  This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else.  If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 3**

**McKendall, Miriam (BOS - X75846)**

| | |
|---|---|
| **From:** | McKendall, Miriam (BOS - X75846) |
| **Sent:** | Monday, December 19, 2005 12:29 PM |
| **To:** | 'dcaggiano@comcast.net' |
| **Subject:** | RE: Confidential |

| | |
|---|---|
| **Importance:** | High |
| **Sensitivity:** | Private |

Attorney Caggiano -

**I have not heard back from you yet.**
**Please respond to me today, per the voicemail I left you this morning.**
**Thank you.**

**-Miriam McKendall**

| | |
|---|---|
| **From:** | McKendall, Miriam (BOS - X75846) |
| **Sent:** | Thursday, December 15, 2005 1:13 PM |
| **To:** | 'dcaggiano@comcast.net' |
| **Subject:** | Confidential |
| **Sensitivity:** | Private |

Attorney Caggiano -

I have not yet heard back from you in response to the Proposed Joint Statement I sent to you on December 8, 2005 (nor in response to my follow-up inquiry to you faxed December 13, 2005).

Also, I have not yet received plaintiff's proposed settlement demand per the local federal rules.

Kindly get back to me today so the parties may satisfy their obligations under the local federal rules in a timely manner.

Thank you.

- Miriam

# Holland & Knight

**Miriam J. McKendall, P.C.**
Partner
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

Main  617-523-2700
Direct 617-573-5846
Fax   617-523-6850
Email  mmckendall@hklaw.com

1

**EXHIBIT 4**

# Holland+Knight

Tel   617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116-3889
www.hklaw.com

December 22, 2005

Miriam J. McKendall, P.C.
617 573 5846
mmckendall@hklaw.com

**BY CERTIFIED MAIL #: 70012510000029073171**
**RETURN RECEIPT REQUESTED**

**BY FACSIMILE (508-775-4502) and E-MAIL (dcaggiano@comcast.net)**

Diane P. Caggiano, Esquire
Law Offices of Diane P. Caggiano
P.O. Box 183
280 Winter Street
Hyannis, MA  02601

> **Re:   Timothy Clarkin v. Wheaton College and Professor Timothy Barker**
> **Civil Action No. 05-11376 NMG**

Dear Attorney Caggiano:

On Wednesday, December 21, 2005, I attended the Rule 16.1 Scheduling Conference before Judge Gorton pursuant to the Court's notice dated October 14, 2005.

Judge Gorton asked me to inform you that the Court expects an explanation from you forthwith as to why you failed to attend the Scheduling Conference.

The Judge conducted the Scheduling Conference in your absence and has set a scheduling order for this case.  I expect that the Court will issue that order shortly.  You should feel free to contact me if you wish any further information in regard to what transpired during the Scheduling Conference.

Kindly copy me on your letter of explanation to the Court regarding your explanation as to why you did not attend the Scheduling Conference.

Thank you for your immediate attention to this very important matter.

Very truly yours,

HOLLAND & KNIGHT LLP

Miriam J. McKendall, P.C.

MJM/afb

# 3473920_v1

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 2510 0000 2907 3171

McKendall
Wheaton/Clarkin

| | | |
|---|---|---|
| Postage | $ | 37 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.42 |

Postmark Here
DEC 2 2 2005

*Sent To*
Diane Caggiano, Esq.
*Street, Apt. No.;*
*or P.O. No.* Box 183, 280 Winter Street
*City, State, ZIP+4*
Hyannis, MA  02601

PS Form 3800, January 2001                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Diane P. Caggiano, Esq.
   Law Offices of Diane Caggiano
   P.O. Box 813
   280 Winter Street
   Hyannis, MA  02601

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
_____                   10/24/05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
   (Transfer from service label)
   7001 2510 0000 2907 3171

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

**<u>EXHIBIT 5</u>**

**McKendall, Miriam (BOS - X75846)**

| | |
|---|---|
| **From:** | dcaggiano@comcast.net |
| **Sent:** | Monday, January 23, 2006 9:54 PM |
| **To:** | Miriam McKendall |
| **Cc:** | Maura Gerhard |
| **Subject:** | Clarkin v. Wheaton College, et. al. |
| **Attachments:** | Initial Disclosure.doc; Initial Disclosure Cover Ltr.doc |

Attached please find Plaintiffs' Initial Disclosures in the above-referenced matter. Please accept my appoligies for the lengthy delay as I was called out of town.
Please call me tomorrow at your earliest convenience on my cell (508) 362-0933 so that we may further discuss this matter.
Thanks,
--
P.O. Box 183
280 Winter Street
Hyannis, MA 01601
(508) 775-4560

**EXHIBIT 6**

## McKendall, Miriam (BOS - X75846)

| | |
|---|---|
| **From:** | Lindsey Straus [lindseystraus@yahoo.com] |
| **Sent:** | Thursday, February 09, 2006 10:59 AM |
| **To:** | maura.gerhart@hklaw.com; mmckendall@hklaw.com |
| **Cc:** | dcaggiano@comcast.net |
| **Subject:** | Clark v. Wheaton College |
| **Importance:** | High |

Dear Attorneys Gerhart and McKendall:

Diane Caggiano has asked me to be co-counsel in the above-referenced matter and I will be entering my appearance today.  Diane has gone to Florida to be with her father, who is dying.

I see from the file that you filed a Motion to Dismiss for lack of prosecution on January 20th.  While I realize that the time for plaintiff's opposition has technically run, I would appreciate it if you would assent to a motion to extend the time to file an opposition until Friday, February 24th.  I cannot tell from the file that I received from Diane whether she complied with the scheduling order regarding the exchange of automatic discovery, which was due on January 6th.  (Indeed, since I have not yet gone on-line to read your motion, it is possible that such failure formed the basis for your motion to dismiss for lack of prosecution).  If in fact, you are owed automatic discovery under Rule 26(a)(1), I will provide it on or before the 24th as well.

Please let me know at your earliest convenience whether you will assent to a motion to extend.

Thank you in advance for your anticipated cooperation.


Lindsey M. Straus, Esq.
Law Office of Lindsey M. Straus
114 Harwich Road
Brewster, MA 02631
(508) 896-8008 (office)
(617) 249-1674 (fax)
lindsey@lindseystrauslaw.com


LINDSEY M. STRAUS E-MAIL CONFIDENTIALITY NOTICE-
This transmission including attachments may be:
(1) Subject to the Attorney-Client Privilege,
(2) Attorney Work Product, or
(3) Strictly Confidential.

If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

Disclaimer regarding Uniform Electronic Transactions Act ("UETA"): If this communication concerns

11/8/2006

negotiation of a contract or agreement, UETA does not apply to this communication. Contract formation in this matter shall occur only with manually affixed original signatures on original documents.

---

I've stopped **316** spam and fraud messages. You can too!
One month FREE spam and fraud protection at www.cloudmark.com

**CLOUDMARK**DESKTOP
Join the spam and fraud-free community!

11/8/2006

**EXHIBIT 7**

29.0

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, SS                                             **SUPERIOR COURT**
                                                        **NO. 06-00157**

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

**BRIAN R. DRISCOLL, ET. AL., PLAINTIFF**

v.

**BOARD OF TRUSTEES OF MILTON ACADEMY, ET. AL., DEFENDANTS**

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

On January 24, 2005 the plaintiff James B. Driscoll ("Jay") and four other young men who were students of Milton Academy were the recipients of oral sex performed on each of them by an underage female student in the boys' locker room. The school found out about it, took statements of those involved, expelled the boys, and turned the results of its investigation over to the district attorney. The school issued statements that the boys had been expelled, indicating in various communications to the press and the Milton Academy parents and alumni that the girl had been pressured or coerced. The basic content of the school's explanation for the reasons for the school's action is set forth in paragraph 61 of the complaint as follows:

- Milton Academy cannot tolerate situations in which any individual regardless of gender is pressured, consciously or unconsciously, to perform sexual acts.

- The boys participated in a situation that involved a 5-to-1 ratio of boys to the single girl. Regardless of any other circumstances, that ratio by definition represents a pressurized situation, and the boys should have known that.

- It was a situation where coercion, either implicit or explicit, was an element of the interaction.

1

The school turned over the results of its investigation to the district attorney who commenced adult and juvenile criminal proceedings. Eventually the criminal proceedings were resolved, with the boys being placed on pretrial probation, required to attend counseling and provide community service, and apologize to the girl's family.

On January 30, 2006 Jay and his parents, Brian and Tracy Driscoll, commenced this action in eight counts against the Board of Trustees of Milton Academy ("the school") and its head of school, Dr. Robin Robertson. The defendants have moved to dismiss the complaint. After argument and review, I will **allow** the motion for the reasons set forth in this opinion.

1. The complaint violates rule 8(a), Mass. R. Civ. P., in that it is not "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint is 33 pages with 126 numbered paragraphs. To be sure, it is colorful rhetoric but it is also verbose, argumentative, and replete with irrelevancies. It fails adequately to inform the defendants of the precise nature of the claims against them, and the grounds therefor. Schaer v. Brandeis University, 432 Mass 474, 477 (2000). I concur with the defendants' observation that the complaint reads "more like a press release than a legal complaint."

2. Count one, for negligence against the school, alleges: "Milton Academy breached its duty of reasonable care by, among other things, failing properly to supervise the Milton Academy campus and students, and, in particular, in failing properly to supervise the school boys' locker room, in failing properly to advise students of any prohibitions on sexual acts on campus, and by causing Jay to make an incriminating statement, without suggesting that he call a parent or a lawyer, without notifying Jay's

2

parents or providing a lawyer for him, and then turning his statement over to the police."
Count six likewise alleges negligence against Dr. Robertson.

The law recognizes no such duties. To be sure, cases such as <u>Mullins v. Pine Manor College</u>, 389 Mass. 47 (1986), recognize a general duty of schools to protect their students from foreseeable harm, but no case distorts that principle by applying it to provide a cause of action to the perpetrator of a criminal act of sexual abuse whose "harm" is being kicked out of the school and turned over to the state authorities for prosecution. Furthermore, it strikes me as utter nonsense to argue that one who tried to take advantage of the school's allegedly lax policing of student sexual morals and got caught can now sue the school for the consequences of his own misbehavior.

As to the investigation, the taking of statements from the participants, the failure to notify the parents or provide (or suggest that they hire) an attorney, and the turning of the results over to the authorities, none of that activity amounts to a violation of any duty which the school had to Jay or his parents. No case supports plaintiffs' assertion

Finally, as to the claim that the school was negligent in failing to advise students of any prohibitions on sexual acts on campus, some things are just too obvious. The boys should have known better.

3. Counts two and three assert breach of contract and breach of the covenant of good faith and fair dealing claims against the school. The counts allege that the school made promises and representations that "obligated Milton Academy to supervise the campus, to treat Jay and his brother fairly and equally to other students, to protect them and certainly not to take steps to put them in harm's way." The counts allege that the school violated its contractual obligations by "failing properly to supervise its campus,

3

failing to contact the Driscoll's prior to taking Jay's forced confession, failing to advise Jay to contact his parents or an attorney before taking his forced confession, treating Jay differently from others similarly situated, and by making false and defamatory statements about Jay to the press."

Apart from ignoring the core facts of the case, the criminal conduct of Jay and others, these counts recite "promises" that are far too general and indefinite to form the basis of a contract cause of action. Sections of the school's handbook are cited in the complaint, but there is no specific allegation that the school failed to follow the procedures set out in the handbook. In particular, the handbook recites that in appropriate cases Dr. Robertson may impose discipline without convening a disciplinary committee. The school was "not required to adhere to the standards of due process guaranteed to criminal defendants." Schaer v. Brandeis University, 432 Mass. 474, 482 (2000). In Schaer, the SJC reiterated that the courts are chary about interfering with disciplinary decisions made by private schools. Id. A school "may not arbitrarily or capriciously dismiss a student". Coveney v. Holy Cross, 388 Mass. 16 (1983). Here, where the serious criminal misconduct is conceded, it cannot be said that the expulsion was arbitrary or capricious. It makes no difference that the school, in its discretion, may have treated the girl more leniently than the boys. "[M]ere comparisons between punishments imposed on students are immaterial to the issue of whether a particular punishment imposed on a particular student is arbitrary or capricious." Id., at 20.

4. Count four is for violation of G.L.c.93A §9 against the school. A private educational institution like the school[1] is not engaged in "trade or commerce" when it undertakes activity in furtherance of its core mission. Shin v. MIT, 2005 WL 1869101, at 8 (Mass. Super. 2005). Discipline of students for criminal misbehavior in a school building is activity within and in furtherance of the school's core mission. Moreover, construed in the light most favorable to the plaintiffs, nothing in this lengthy complaint recites facts which would form the basis of a chapter 93A action.

5. Count five is for "Defamation/Libel/Slander" against the school and Dr. Robertson. The specific allegations are that Dr. Robertson and a Ms. Everett, a representative of the school, made statements about Jay to the effect that Jay and the other boys "pressured" and "coerced" the girl into performing oral sex in the locker room. Elsewhere in the complaint the plaintiffs allege that the girl had performed oral sex on other groups of boys, not including Jay, and that she appeared topless at an off-campus party, implying, presumably, that she was promiscuous and was a willing participant in the sexual acts.

In paragraphs 61 and 65 of the complaint more detailed descriptions of the allegedly defamatory statements are set forth. The "pressure" or "coercion" which school representatives were referring to was the "5 to 1 ratio of boys to the single girl. That by definition represented a pressurized situation, which the boys should have known. It was a situation where coercion, either implicit or explicit, was an element of the interaction." (Complaint, ¶ 65).

---

[1] I take judicial notice, based on state and federal tax exemption letters issued to the school, that the school is a charitable corporation. This does not appear to be a seriously contested issue.

That the 5 on 1 situation was a "pressurized situation" was an opinion which cannot form the basis of a defamation claim. That the event of oral sex occurred involving five boys and one girl is not disputed.

The other allegedly defamatory statement has to do with prior incidents of oral sex involving three boys and the girl on January 22 and January 23, 2005. The school learned of these incidents after its disciplinary action in respect to the five boys and the girl for the events of January 24. In a March 3, 2005 letter to parents, Dr. Robertson said that with respect to the January 22 and January 23 incidents, the "students who participated are those we have already disciplined." Jay was not one of the participants in the events of January 22 and January 23. The letter does not name him, and does not imply that he was a participant in the earlier events. It cannot be read as defaming Jay.

6. Count seven is for negligent infliction of emotional distress against the school and Dr. Robertson. This count must be dismissed for the same reasons as counts one and six must be dismissed. The defendants had no duty to protect Jay from engaging in criminal behavior having consequences such as expulsion. That the school may have been lax in disciplining students for sexual misbehavior prior to the incident in question does not provide the plaintiffs with a cause of action against the school for the consequences of Jay's own criminal conduct. Furthermore, the complaint alleges no physical manifestations of harm to Jay which is required for a claim of negligent infliction of emotional distress. Sullivan v. Boston Gas Co., 414 Mass. 129 (1993).

7. Count 8 is for intentional infliction of emotional distress against the school and Dr. Robertson. The inescapable fact of this case is that Jay Driscoll and four other boys engaged in acts of oral sex with an underage girl in the boys' locker room. The school

6

expelled them for it. Yet the plaintiffs claim that the school's action was "extreme and outrageous", "beyond all possible bounds of decency", and "utterly intolerable in a civilized society". The claim turns the law upside down. The expressions more appropriately characterize the conduct of Jay and the other boys than the school or Dr. Robertson. The claim is meritless.

## **ORDER**

The defendants' motion to dismiss is **allowed**.

Patrick F. Brady
Justice, Superior Court

3ʲᵍ Aug 06

7

# EXHIBIT 8



# Commonwealth of Massachusetts
## County of Norfolk
### The Superior Court

*36.0*

CIVIL DOCKET# **NOCV2004-00422**

Michael Lubin, Kathleen Lubin, Richard Lubin,
Plaintiffs

vs.

The Board of Trustees of Milton Academy,
Defendant

*dated*
RECEIVED & FILED
CLERK ...... 3/31/06
NORFOLK COUNTY

### <u>SUMMARY JUDGMENT M.R.C.P. 56</u>

This action came on to be heard before the Court, Elizabeth Bowen Donovan, Associate Justice, presiding, upon motion of the defendant, The Board of Trustees of Milton Academy, for Summary Judgment pursuant to Mass. R. Civ. P. 56. The parties having been heard  and the Court having considered the pleadings, memoranda and affidavits, finds there is no genuine issue as to material fact and that the defendant is entitled to a judgment as a matter of law,

It is **ORDERED and ADJUDGED:**

That the Complaint of the Plaintiffs, Michael Lubin, Kathleen Lubin, Richard Lubin be and hereby is **DISMISSED** against the Defendant, The Board of Trustees of Milton Academy,  with costs.


Dated at Dedham, Massachusetts this 31st day of March, 2006.




By:.....................................................
Assistant Clerk


A TRUE COPY
Attest: *Mary E. Kearney*
Deputy Assistant Clerk
3/31/06

cvdjud56d_1.wpd 475537 inidoc01 hickeyma

35.0

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 04-00422

MICHAEL LUBIN & others[1]

vs.

THE BOARD OF TRUSTEES OF MILTON ACADEMY

## MEMORANDUM OF DECISION AND ORDER
[ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT]

On March 10, 2004, the plaintiffs, Michael Lubin, Kathleen Lubin, and Richard

Lubin (collectively the "Lubins"), filed a Complaint against the defendant, the Board of

Trustees of Milton Academy ("Milton Academy"). The Complaint alleges two counts of

breach of contract by the defendant. Milton Academy moves for summary judgment on

both counts.

For the reasons discussed below, the motion for summary judgment is

**ALLOWED.**

## BACKGROUND

During the 1997-1998 academic year, Michael Lubin lived in Orange,

Connecticut with his family and attended Amity Regional Junior High School.[2] During

the 1997-1998 academic year, Michael applied to several private boarding high schools

in the New England region, including Milton Academy. On or about March 10, 1998,

Milton Academy offered Michael a seat in the incoming freshman class. Michael

---

[1] Kathleen Lubin and Richard Lubin.

[2] In March, 1997, Richard Lubin began new employment in Florence, South Carolina. Following the
completion of the 1997-1998 academic year, Mrs. Lubin joined her husband in Florence. Until then, Mrs. Lubin
lived in Orange, Connecticut with her two sons.

accepted the offer and on or about April 5, 1998, Mrs. Lubin signed the enrollment

contract, enrolling him as a boarding student for the 1998-1999 academic year.

Before signing the enrollment contract, the Lubins claim to have reviewed the

portion of the Peterson's 1998 Commentary relating to Milton Academy (the "Peterson

Excerpt").[3]  Peterson's is a commercial entity that collects and publishes information on

private high schools.  It is unrelated to Milton Academy.   The Peterson's 1998

Commentary provides in pertinent part:

> Each faculty member is adviser to a group of 6-8 students and is
> responsible for seeing to the academic, social, and emotional well-being
> of these students.

In July 1998, Milton Academy sent the Lubins the Milton Academy Handbook For

Students and Parents Classes I-IV 1998-1999 ("the 1998-1999 Handbook").[4]  The

1998-1999 Handbook includes the following provisions:

> **The Advising of Students**:  The connecting links between students,
> parents, and the school lie primarily within the advising system.  Advisors
> address themselves to various aspects of academic progress and general
> personal development.  Parents are urged to make immediate contact
> with their child's advisor and feel free to get in touch with any of those who
> teach or coach their children.  The following formal categories are
> included in the advising system and are supplemented by the numerous

---

[3] The Lubins assertion they received the Peterson's excerpt from Milton Academy is not supported by the record. In her deposition, Mrs. Lubin responded to a question regarding who at Milton Academy provided the excerpt by stating, "I don't remember.  I don't remember if it was mailed to us or it was picked up during one of the informational sessions."

[4] The Lubins' assertion that they received a copy of the 1998-1999 Handbook before signing the enrollment contract in April 1998 is not supported by the record.  The affidavit of John Warren, a Dean at Milton Academy, indicates that the 1998-1999 Handbook had not yet been written at that time and that it was not printed or distributed until July 1998.  The Lubins have not proffered (1) an affidavit to specifically counter the Warren affidavit or (2) a document actually in existence prior to the signing of the enrollment contract that made a similar statement. Moreover, the Lubins' reliance on a general assertion from an interrogatory response is insufficient, standing alone, to create a dispute of material fact on this issue.  See Plaintiffs' Supplemental Answers and Objections to Defendant's Second Set of Interrogatories, Answer Nos. 6 & 7 (documenting the plaintiffs' generalized response); see also Mass. R. Civ. P. 56(E).

informal adult contacts available to each student.

1. The Student's Advisor - Every student has an advisor who is responsible for academic matters and who stands ready to offer guidance and support at any time. Older students will often retain the same advisor for three years. The advisor sees each student frequently and prepares summary reports on the student's progress periodically during the year. If a student has academic or disciplinary problems, the advisor is always involved. Frequent communication between parent and advisor is encouraged and assumed.
. . .

3. Board Staff - Each House is under the direction of a Head(s), assisted by resident faculty. Boarding students are generally advised by a member of the staff in their house. The House Head is an additional resource beyond the student's individual advisor for questions and concerns. . . . . 1998-1999 Handbook at 6.

During the summer preceding the 2000-2001 academic year, the Lubins

received a Milton Academy Parents' Guidebook 2000-2001 ("2000-2001 Parents'

Guidebook"). This was the first parents' guidebook published by Milton Academy. The

2000-2001 Parent's Guidebook provides in pertinent part:

Q:    How does the housing selection process work?

A:    Working together, the house heads, dean of students and admissions directors make housing decisions. They place students in houses with an eye toward creating a good balance of age, background, race and student interests in each house. Students should think of their houses as their "family" away from home, and they normally live in the same house throughout their Milton years.
. . .

Q:    What happens if my child needs extra support with academic work?

A:    When students feel they need extra support in a course, the first resource is the classroom teacher. Normally a teacher can provide the student an extra help session every week. If the student needs more general support or experiences academic difficulties that cannot be addressed to everyone's satisfaction through extra help from the teacher, the student, working through his or her advisor, should meet with the director of academic skills. If long-term tutoring help is needed, whether generally or

with a particular subject, the director of academic skills can help make the arrangements. . . . Parents would be responsible for the expense of this tutoring.

In September 1998, Michael matriculated at Milton Academy as a ninth grade boarding student assigned to Faulkner dormitory.[5] His advisor was Edward Villaciencio ("Villaciencio"). In his role as Michael's advisor, Villavicencio prepared tri-annual Advisor's Reports to document Michael's academic performance during the 1998-1999 and 1999-2000 academic years.[6] He met annually with the Lubin's to discuss Michael's academic performance, counseled Michael with respect to disciplinary issues and the use of inappropriate language. Due to Michael's academic difficulties, Villaciencio made repeated recommendations on ways to improve his academic performance. Michael has set forth a litany of concerns about Villavicencio's performance as his advisor, none of which are material to the disposition of this matter.

During the 1999-2000 academic year, Michael was placed on academic probation. He received additional help.

In November 2000, Milton Academy suspended Michael for the remainder of the 2000-2001 school year because he left racial slurs on a fellow student's voice mail. Prior to returning Michael was required to satisfy a number of conditions such as reading books on racism and obtaining psychological counseling. In the fall of 2001, Michael re-enrolled at Milton Academy. He was assigned to a different advisor and

---

[5] Michael stated in his deposition that he would have preferred Wolcott dormitory because of its proximity to the center of campus.

[6] Villavicencio discussed these reports with Michael and sent copies to his parents.

-4-

dormitory.[7]  Michael graduated from Milton Academy in the spring of 2003.  In the fall of 2003, he matriculated at Chapman University.

## DISCUSSION

The Lubins assert that Milton Academy breached the contract between the parties by violating promises in its handbooks, guidebooks, and other promotional materials.  They claim the student-advisor relationship was central to their contract with Milton Academy and that Villavicencio's actions and omissions constituted a breach of the agreement.  As established below, the Lubins' breach of contract claims fail for two reasons.

To maintain a claim for breach of contract, the Lubins must demonstrate that (1) a contract existed between the parties, (2) Milton Academy failed to perform an obligation under the contract, and (3) that they suffered damages as a result of Milton Academy's failure to perform.  *Guckenberger* v. *Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997).  Under Massachusetts law, statements in handbooks and/or promotional materials can form the basis of a contract.  See *Shin* v. *Massachusetts Institute of Technology*, Middlesex No. 02-0403, 19 Mass. L. Rptr. 570, 573 (Mass. Sup. Ct. June 27, 2001) (McEvoy, J), citing *Russell* v. *Salve Regina College*[8], 890 F.2d 484, 488 (1st Cir. 1989), rev'd on other grounds 499 U.S. 225 (1991) and reinstated on remand 938 F.2d 315 (1st Cir. 1991) (explaining that promotional materials can set out the bounds of a contract).  However, the promise set forth in these materials must be

---

[7] The Lubins did not raised the argument, or for that matter offered any specific evidence to show, that they relied any of the aforementioned materials when re-enrolling Michael at Milton Academy.

[8] This case was decided on the issue of substantial performance and not on promotional materials.

"definite and certain so that the promisor should reasonably foresee that it will induce reliance . . . ." *Shin*, No. 02-0403, 19 Mass. L. Rptr. at 574, quoting *Guckenberger*, 974 F. Supp. at 150.

In the present case, the Lubins have failed to demonstrate that they relied on any of the promotional materials cited in their Complaint. First, the 1998-1999 Handbook and the 2000-2001 Parents' Guidebook were not in existence at the time the Lubins signed the enrollment contract in April 1998. Thus, it was not reasonably foreseeable for Milton Academy to anticipate that the Lubins would rely on these materials when signing the contract. *Guckenberger*, 974 F. Supp. at 150. Second, as the Lubins have offered no evidence to demonstrate that Milton Academy sent them the Peterson's excerpt, Milton Academy can not be held responsible for the Lubins' purported reliance on written statements of an independent third party. Therefore, as the plaintiffs' cannot demonstrate reliance on the promotional materials, the defendant's motion for summary judgment is allowed on Counts I and II.

Even if the Lubins' could show that Milton Academy should have anticipated their reliance on the specified promotional materials, the "promises" set out therein are merely general representations and thus, insufficient to form an enforceable contract. *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 478 (2000) (explaining "we employ the standard of reasonable expectation - what meaning the party making the manifestation . . . should reasonably expect the other party to give it.") (internal quotations omitted); *Morris* v. *Brandeis Univ.*, 60 Mass. App. Ct. 1119, 2004 WL 369106, *3 n.6 (2004) (unpublished opinion) (explaining general representations in a school's promotional materials are insufficient to form an enforceable contract). Here, the "promises" in

-6-

relevant sections of the 1998 Handbook and the 2000-2001 Parents' Guidebook,

neither of which were in existence at the time Kathleen Lubin signed the enrollment

contract, merely describe the purpose and goals of Milton Academy's advising system.

Cf. *Shin*, 19 Mass. L. Rptr. at 574 (explaining "[t]he representations made in the MIT

Medical Department brochure . . . are merely "generalized representations" of the

purpose and medical services available to the MIT community."). They make no

promise regarding the student's actual intellectual or emotional development.

Moreover, the cited sections do not guarantee a boarding student the housing of his

choice.   In sum, the representations in these documents are insufficient to form an

enforceable contract.  Therefore, the defendant's motion for summary judgment on

Counts I & II is allowed.


### ORDER

    For the reasons discussed herein, the defendant's motion for summary judgment

on Counts I and II is **ALLOWED**.


                                        *Elizabeth Bowen Donovan*
                                        Elizabeth Bowen Donovan
                                        Justice of the Superior Court

                                        A TRUE COPY
Date: March 31, 2006                    Attest: *Mary E. Kenney*
                                        Deputy Ass't Clerk      3/31/06


-7-

# EXHIBIT 9

Westlaw.

804 N.E.2d 961 (Table)
60 Mass.App.Ct. 1119, 804 N.E.2d 961 (Table), 2004 WL 369106 (Mass.App.Ct.)
**Unpublished Disposition**
**(Cite as: 60 Mass.App.Ct. 1119,  804 N.E.2d 961,  2004 WL 369106 (Mass.App.Ct.))**

**H**

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

Appeals Court of Massachusetts.
Drew A. MORRIS,
v.
BRANDEIS UNIVERSITY.
No. 01-P-1573.

Feb. 27, 2004.

MEMORANDUM AND ORDER PURSUANT TO
RULE 1:28
***1 Drew A. Morris appeals from summary judgment entered in favor of the defendant, Brandeis University (Brandeis).

On May 7, 1997, Morris, a second-semester senior at Brandeis, submitted his final paper in a history course taught by associate professor Alice Kelikian. On May 12, 1997, Professor Kelikian submitted a student judicial system referral report to the office of campus life, charging Morris with verbatim plagiarism from four secondary sources on his final paper. II: 119 After notice to Morris, an investigation, and a hearing in accordance with procedures as set forth in Brandeis's student handbook (handbook), Brandeis's board on student conduct (board) unanimously found against him. Morris pursued an administrative appeal of the decision on the basis of "procedural irregularities and new evidence." On May 30, 1997, Morris was notified that Brandeis's appeals board on student conduct had denied his request for a new hearing. Morris then brought this action in Superior Court against Brandeis for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and breach of fiduciary duty. A motion judge subsequently allowed Brandeis's motion for summary judgment, and Morris appealed. We affirm.

*Discussion. 1. Breach of contract.* In reviewing a student discipline case like this one involving an alleged contractual relationship, we consider whether the university violated any of the student's reasonable expectations created by one or more specific

provisions of the contract, [FN1] *Schaer v. Brandeis Univ.,* 432 Mass. 474, 478 (2000), and examine the record to ensure that the hearing was conducted with basic fairness. See *Coveney v. President & Trustees of the College of the Holy Cross,* 388 Mass. 16, 19-20 (1983); *Schaer v. Brandeis Univ., supra* at 481. Great deference is extended to university decision-making on academic and disciplinary matters. See *Schaer v. Brandeis Univ., supra* at 482; *Berkowitz v. President & Fellows of Harvard College,* 58 Mass.App.Ct. 262, 269 (2003).

> FN1. For purposes of the motion for summary judgment, Brandeis conceded that the relationship between its students and itself was contractual in nature. See *Schaer v. Brandeis Univ.,* 432 Mass. 474, 478 (2000). Morris identified the handbook as the main source of the terms defining his contractual rights.

(a) *Handbook provisions.* Here, the only specific provisions of the contract allegedly violated by Brandeis were the ones pertaining to the student's right to an advisor of his choice. [FN2] Morris claims that Brandeis effectively denied him this right by "intimidating," "threatening," and scaring off three potential advisors who had originally agreed to help him. The judge ruled that this claim failed because Morris lacked admissible evidence to prove it. We agree. All of the out-of-court statements about which Morris sought to testify as a witness at trial were hearsay because offered for the truth of the matter asserted. None fell within any recognized exception to the hearsay rule, including the exception described in *Ruszcyk v. Secretary of Pub. Safety,* 401 Mass. 418, 420, 423 (1988).

> FN2. Section 20 of the handbook sets forth the procedural standards in the student judicial process. Section 20.8 guarantees the accused student "the right to bring an advisor of his/her choice from the University community to assist in presenting the case before the Board or for advice during the hearing." (II: 111) Section 20.9 authorizes the advisor to present evidence and to introduce witnesses on behalf of the accused student. (II: 112) Section 20.11 permits the advisor to question all witnesses and to view

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

804 N.E.2d 961 (Table)                                                                                                    Page 2
60 Mass.App.Ct. 1119, 804 N.E.2d 961 (Table), 2004 WL 369106 (Mass.App.Ct.)
**Unpublished Disposition**
**(Cite as: 60 Mass.App.Ct. 1119,  804 N.E.2d 961,  2004 WL 369106 (Mass.App.Ct.))**

and to question all evidence presented to the board at the hearing.

The judge properly excluded the out-of-court statements of the unnamed graduate student because the statements were unreliable. See *Simmons v. Yurchak,* 28 Mass.App.Ct. 371, 374-375 (1990). Brandeis should not be bound by the vicarious admission of a nameless agent who cannot be subjected to cross-examination. Moreover, the graduate student's statements to Morris about what one or more unidentified individuals allegedly told him constitute hearsay within hearsay. On appeal, Morris has not shown how each layer of hearsay was independently admissible. See *Commonwealth v. McDonough,* 400 Mass. 639, 643 & n. 8 (1987). The same may be said of the alleged statements to Morris by professors Antony Polonski and Paul Jankowski. Finally, Morris's averments in his affidavit characterizing Professor Polonsky's statements were properly excluded as conclusory and lacking in evidentiary foundation. [FN3] See *Madsen v. Erwin,* 395 Mass. 715, 721 (1985).

> FN3. Morris averred in his affidavit that Professor Polonsky told him "that he could not serve in such a capacity [an advisor] without having 'a major row with a colleague' and in fact had been intimidated into not acting in such a role." IV: 245 Morris further averred that Professor Polonsky told Morris that Professor Jankowski also could not serve as his advisor for much of the same reason. IV: 245

***2** Also properly excluded on the basis of irrelevance were written statements of Professor Antony Polonsky. [FN4] See Liacos, Brodin & Avery, Massachusetts Evidence § 4.1.2 (7th ed.1999); *Liarikos v. Mello,* 418 Mass. 669, 672 (1994). Professor Polonsky's expressions of his subjective feelings were inadequate to show that an agent of Brandeis had threatened to take some sort of adverse action against him if he served as Morris's advisor at the hearing. See *Mitchell v. TAC Technical Servs., Inc.,* 50 Mass.App.Ct. 90, 91 n. 3 (2000) . [FN5]

> FN4. At Morris' request, Professor Polonsky, the chairman of the Near Eastern and Judaic Studies Department at Brandeis, wrote a letter of recommendation in May, 1998, one year after the disciplinary

proceedings at issue in this litigation. (VI: 701-702) According to Professor Polonsky, he wrote this letter on the condition that the letter would be strictly confidential and used solely in connection with Morris's application for law school (and not in any action against Brandeis). (V: 559-560) In that letter, Professor Polonsky stated that he believed the charge of plagiarism had been unjustified. He further explained that although he "felt this was a grave injustice ... as a newcomer to the United States and unwilling to involve [him]self in a major row with a colleague, [he] did not oppose the decision as vigorously as [he] should have." (VI: 702)

> FN5. Morris takes issue with the judge's characterization of his testimony as "self-serving." In context, it appears that the motion judge's description was a reference to "conclusory statements [in the affidavit], offered without any evidentiary foundation or factual underpinning." Memorandum of Decision at 7. There was no error. See *Madsen v. Irwin,* 395 Mass. at 721.

(b) *Basic fairness.* After reviewing the record, we conclude that there was nothing fundamentally unfair about the process received by Morris. From the date of the charge through the appellate process, Brandeis adhered strictly to its procedural rules, see § § 18-23 of the handbook, and Morris received more process than was required, in the form of a posthearing meeting with the dean of student affairs.

To the extent that Morris questions the fairness of the sanction, § 5 of the handbook expressly warns students that violation of university policies on academic honesty can lead to "serious penalties," including failure in the course and other sanctions. See § 5 of the handbook. The sanction in this case fell within the range of permissible actions allowed by the handbook. See § 21 of the handbook.

Morris's failure to acknowledge responsibility for his actions, and his blaming Brandeis for not teaching him appropriate methods of citation, was an invalid defense under § 5.4 of the handbook.

Finally, Morris has failed to place into legitimate dispute the fact that the sanction ultimately imposed upon him was consistent with those imposed upon other upperclass students under similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

804 N.E.2d 961 (Table)
60 Mass.App.Ct. 1119, 804 N.E.2d 961 (Table), 2004 WL 369106 (Mass.App.Ct.)
**Unpublished Disposition**
**(Cite as: 60 Mass.App.Ct. 1119, 804 N.E.2d 961, 2004 WL 369106 (Mass.App.Ct.))**

Page 3

circumstances. II: 5, 139 There was no arbitrary, capricious or unfair conduct by Brandeis.

Nor is there any merit to Morris's specific objections to the process. First, to the extent that Morris now suggests that the hasty scheduling of the hearing four days after the charge was brought was unfair, we note that when the hearing was scheduled, graduation was two weeks away. At the time, Morris sought to resolve the issue of plagiarism, which had a potential impact on his ability to graduate, in a timely fashion. V: 504 There is no evidence that Morris, who hoped to participate in the senior week activities, either objected to the scheduling or asked for a continuance of the proceedings as permitted by § § 20.2 and 20.17 of the handbook.

Morris next claims that Professor Kelikian and her teaching assistant unfairly highlighted and annotated copies of his paper for presentation to the board without providing him with a copy prior to the hearing. According to Morris, these color-coded copies, which lacked the cover page and bibliography from his original paper, gave a "false and misleading impression" of Morris's work as a whole.

No procedural rule required Professor Kelikian to provide Morris with the evidence she would be submitting to the board prior to the hearing. It was undisputed that Morris's original paper, including the cover page and the bibliography, was presented in its entirety to the board at the hearing. II: 3 The original source materials, portions of which Morris was accused of passing off as his own work, were available to the board as well. Morris did not cross-examine Professor Kelikian at the hearing about the "misleading" evidence or bring the missing sections of his paper to the attention of the board.

***3** Morris's footnotes, furthermore, were not simply misplaced on the wrong pages or in his bibliography. Our review of Morris's paper reveals several instances in which secondary sources were lifted without attribution by either quotation marks or footnotes anywhere in the paper. II: 46-87 Because Morris had no valid defense to the charges of academic dishonesty, Morris cannot be said to have suffered any prejudice from Professor Kelikian's "misleading" evidentiary submissions.

To the extent that Morris claims that statements made by Lori Tenser, associate director of campus life, misled him about the role of the student advisor, we note that Morris admitted that around the same

time that Tenser made these alleged misstatements, Tenser also told him to "make sure [he was] familiar with parts of Rights and Responsibilities." V: 427 Morris further admitted that he read the handbook before the hearing, though he claims that he was unable to fully comprehend the provisions. V: 426, 429. Sections 20.8, 20.9, and 20.11 of the handbook expressly set forth the full range of actions that may be taken by a student's advisor at a disciplinary hearing. Given the language of these provisions, Morris could not have reasonably expected that Tenser's oral representations--which plainly conflicted with these provisions of the contract-- governed his rights at the hearing. In light of the overwhelming evidence of a fair process that was undertaken in connection with the charge of academic dishonesty against Morris, as well as the absence of evidence of bad faith or improper motive, no reasonable jury could find that Tenser's misstatements rose to the level of arbitrary and capricious conduct necessary to sustain a breach of contract claim. See *Coveney v. President & Trustees of the College of the Holy Cross,* 388 Mass. at 19-20; *Pacella v. Tufts Univ. Sch. of Dental Med.,* 66 F.Supp.2d 234, 241-242 & n. 12 (D.Mass.1999).

In sum, Morris has failed to adduce sufficient facts from which a jury could find that Brandeis violated his reasonable expectations or that Brandeis deprived Morris of basic fairness in the conduct of the disciplinary proceedings. Summary judgment, therefore, was properly granted in favor of Brandeis on the breach of contract claims. [FN6]

> FN6. To the extent that Morris claims that certain promotional materials also formed the basis of a contract with Brandeis and that Brandeis breached its "generalized representations" to treat its students with "fairness and beneficence," any promises contained in these materials were too vague and indefinite to form an enforceable contract. Blue br. at 32-33. See *Blair v. Cifrino,* 355 Mass. 706, 710 (1969); *Santoni v. Federal Deposit Ins. Corp.,* 677 F.2d 174, 179 (1st Cir.1982).

2. *Breach of the implied covenant of good faith and fair dealing.* No reference is made to this claim in Morris's statement of the issues presented for review. (Blue br. at pp. 1-2) The argument concerning Brandeis's alleged breach of the implied covenant is buried within Morris's analysis of his contract claims, and he fails to cite relevant case law in support of it.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

804 N.E.2d 961 (Table)                                                                                   Page 4
60 Mass.App.Ct. 1119, 804 N.E.2d 961 (Table), 2004 WL 369106 (Mass.App.Ct.)
**Unpublished Disposition**
**(Cite as: 60 Mass.App.Ct. 1119,  804 N.E.2d 961,  2004 WL 369106 (Mass.App.Ct.))**

This peripheral treatment of the claim does not rise to the level of adequate appellate argument, and on that basis, the claim is deemed waived. See _Eccleston v. Bankosky,_ 438 Mass. 428, 439 (2003); _Ravnikar v. Bogojavlensky,_ 438 Mass. 627, 629 n. 2 (2003).

Were we to reach the merits, we would conclude that the judge properly allowed Brandeis's motion for summary judgment on the claim, which seems to have been based upon the same set of facts as the breach of contract claims. Assuming that a breach of covenant claim lies in this context, no reasonable jury could conclude on the record presented that Brandeis acted arbitrarily or in bad faith in this matter. See _Mangla v. Brown Univ.,_ 135 F.3d 80, 84 (1st Cir.1988).

***4 3. _Negligent misrepresentation._ Summary judgment was also properly granted on Morris's negligent misrepresentation claim, but for reasons other than those relied on by the motion judge. [FN7] As pressed on appeal, his claim was based upon the false statements by Tenser. [FN8] According to Morris, Tenser "grossly mischaracterized" the role of the advisor, erroneously informing Morris that the advisor could only provide "moral support." She also allegedly informed him that the advisor could not speak at the hearing or address the board. It was undisputed, however, that Tenser provided Morris contemporaneously with a copy of the handbook containing provisions that plainly conflicted with her oral statements. She also told him to familiarize himself with it. Although Morris claims that he was unable to comprehend fully the provisions, he admits that he read the handbook before the hearing. Under the circumstances, any reliance by Morris on Tenser's statements was unreasonable as matter of law. See _Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,_ 438 Mass. 459, 467-469 (2003); _Collins v. Huculak,_ 57 Mass.App.Ct. 387, 392-394 & n. 7 (2003).

> FN7. Morris correctly points out that the judge misstated the elements of negligent misrepresentation, see _Fox v. F & J Gattozzi Corp.,_ 41 Mass.App.Ct. 581, 587 (1996), and the grant of summary judgment could not, therefore, have been based on the failure to produce evidence establishing Brandeis's intention to mislead.

> FN8. We reject his argument, made without citation to relevant authority, that statements in the handbook setting forth procedural

guarantees were false or "became misrepresentations" when Brandeis declined to honor them in practice.

4. _Breach of fiduciary duty._ Pursuant to section 19.11 of the handbook, Tenser served as the _board_ advisor during the judicial process. II: 110 Thus, under section 20.8 of the handbook, she was disqualified from serving as Morris's advisor. There was no fiduciary relationship between a student and a university administrator/advisor like Tenser in these circumstances. See _Sullivan v. Boston Architectural Center, Inc.,_ 57 Mass.App.Ct. 771, 774 (2003) (generally, relationship between university and student is strictly contractual). Morris has failed to assert any particular facts in this case that would warrant the imposition of a heightened duty upon Brandeis. There was no error in the grant of summary judgment with respect to this claim.

_Judgment affirmed._

60 Mass.App.Ct. 1119, 804 N.E.2d 961 (Table), 2004 WL 369106 (Mass.App.Ct.) Unpublished Disposition

**Briefs and Other Related Documents (Back to top)**

• 2003 WL 23930099 (Appellate Brief) Reply Brief of Plaintiff-Appellant, Drew A. Morris (Apr. 04, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 23930101 (Appellate Brief) Brief of Defendant-Appellee Brandeis University (Jan. 21, 2003)Original Image of this Document with Appendix (PDF)

• 2002 WL 32758870 (Appellate Brief) Brief for Plaintiff-Appellant, Drew A. Morris (Oct. 23, 2002)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.